## The People v. William Deitz.

*Criminal law—Evidence—Duty of prosecutor.*

1. In a prosecution for assault with *intent* to do great bodily harm less than the crime of murder, it is competent for the people to show that the prior relations of the parties were unfriendly, and specific threats and acts of violence on the part of the respondent may be given in evidence. *People v. Potter*, 5 Mich. 8; *Dillin v. People*, 8 Id. 357; *People v. Bemis*, 51 Id. 422; *People v. Eaton*, 59 Id. 559.

2. Where, in such a case, the testimony fails to show a present intention of inflicting the threatened injury, but does show that the threat was conditional, depending for its execution upon the action of the injured party, and that it was not executed, and that the parties worked on adjoining farms for three years afterwards, during which time no ill feeling was

shown to have been harbored by the respondent towards the complainant, evidence of such a threat has no tendency to show the existence of such ill feeling, and should be rejected.

3. If such evidence is admitted, and the respondent, instead of relying upon his objection and exception, goes upon the stand and denies making the threat, it is not competent for the people to show that it was made, on rebuttal, by way of impeachment of the respondent. *People v. Hillhouse*, 80 Mich. 580.

4. It is not correct practice to compel the defense to call witnesses present at the occurrence for which the party is upon trial. *Maher v. People*, 10 Mich. 225; *Hurd v. People*, 25 Id. 415; *Thomas v. People*, 39 Id. 312; *People v. Davis*, 52 Id. 573; *People v. Swetland*, 77 Id. 57.

So *held*, where the names of certain witnesses, who were shown by the preliminary examination to have witnessed the affray at a distance of from 35 to 40 rods, were not indorsed on the information, and the court declined to require the prosecuting attorney to call them on the request of the respondent's counsel, although present in the court-room, and they were afterwards called and sworn on behalf of the respondent.

5. It is incumbent upon the prosecuting attorney not only to have such witnesses present in court, but to have them sworn in behalf of the people, and he may then examine them much or little, as he chooses; thereby affording the respondent an opportunity of cross-examination without prejudicing his case by the bias of the witness, if he should have any.[1] *People v. Etter*, 81 Mich. 570 (head-note 2).

6. It is incompetent for the prosecuting attorney, after refusing to call and swear a witness who was present at the occurrence for which the respondent is on trial, to comment upon the fact that such witness was sworn upon the preliminary examination, or that he was present in court, and was not called by the respondent.

7. Evidence of experiments and observations made by witnesses two months after an affray, offered to show that certain witnesses who had testified to seeing the affray from the stoop of a neighboring dwelling-house could not have seen it, is inadmissible, unless it is shown that no change had taken place in the surroundings of the location between the time of the affray

---

[1] See, as to right of cross-examination after a witness is sworn, *People v. Barker*, 60 Mich. 279 (head-note 11), and cases there cited; *Turnbull v. Richardson*, 69 Id. 401 (head-note 10); *Ireland v. Railroad Co.*, 79 Id. 163 (head-note 1).

and the time when the experiments and observations were made.

Exceptions before judgment from Ingham. (Peck, J.) Argued June 17, 1891. Decided July 3, 1891.

Respondent was informed against for an assault with intent to do great bodily harm less than the crime of murder, and was convicted of a simple assault. Conviction set aside, and a new trial ordered. The facts are stated in the opinion, and in foot-notes.

*Q. A. Smith,* for respondent.

*A. A. Ellis,* Attorney General, for the people.

[The points of counsel, and the authorities bearing upon the same, are fully stated and cited in the opinion and foot-notes.—REPORTER.]

CHAMPLIN, C. J. Deitz was informed against in the circuit court for the county of Ingham to the effect that on the 9th day of June, in the year 1890, at the township of Alaiedon, in Ingham county, he made an assault upon one Herman De Long with a large club, which he then and there had, and did strike said De Long several grievous and dangerous blows upon the head and other parts of the body, with the intent him, the said Herman De Long, feloniously, willfully, and maliciously to do great bodily harm, less than the crime of murder. The case was tried in the Ingham circuit court, before the Honorable Erastus Peck, circuit judge, and a jury, and resulted in a verdict of guilty of assault, but not guilty with the intent to do great bodily harm less than the crime of murder. The respondent brings the case here upon exceptions before sentence.

It appears from the record before us that one Dr. L. R. Chaddock, who had retired from practice as a phy-

sician, was the owner of 160 acres of land in the township of Alaiedon, which fronted on a highway running north and south, and that upon each of the 80-acre tracts there were a residence, barns, and other outhouses; that prior to April 1, 1890, one Alfred Barnes, a son-in-law of Dr. Chaddock, had been in possession of the south 80-acre tract or farm as a tenant; that he had been notified by his father-in-law to quit the possession of the premises on the 1st day of April, 1890, and that he soon thereafter removed therefrom, but left upon the premises certain personal property. He claims he had an arrangement with the doctor by which he might remove such property after that date. It appears that there had been some unpleasant feeling between Dr. Chaddock and his son-in-low, Barnes, prior to the 9th day of June, 1890. It also appears that for several years Dr. Chaddock had a man in his employment working upon his farm by the name of William Deitz, the respondent in this case; and that his son-in-law, Barnes, also had a hired servant, who had worked the farm he occupied for several years, whose name was Herman De Long.

Barnes had been taking away his personal property from time to time, and on the 9th day of June, 1890, went with his hired man, De Long, to draw away a load of wood. To reach the wood-lot it was necessary for him first to leave the highway by way of a lane running east and west, passing the barn, and thence proceeding to the wood-lot, which was on the rear of the 80. After he had gone to the wood-lot, Chaddock and respondent, Deitz, went onto a field in the rear of the barn with a team, accompanied by a grandson by the name of Claude Hughson, a lad about 13 years of age, to get a load of stone for the purpose of placing them by a tile drain which Chaddock was constructing. While there Barnes and De Long came towards them from the wood-lot with

their load of wood, whereupon Chaddock and Deitz went to a gate which was at the corner of the barn, and when they arrived there told Barnes to stop his team, and an altercation ensued, Barnes claiming that Chaddock drew a revolver, and, cursing him, told him that he would force him to his knees; that he asked Chaddock to open the gate, and he replied that he could not pass through that gate; that he got off the load, and went to open the gate, and Chaddock flourished the revolver, and threatened to shoot him; that he passed him, and swung the gate open, and told his man to drive through, which he did; that he thereupon went to get upon his load, and the doctor struck him with his revolver, which he warded off with his left wrist. It appears also from Barnes' statement that he had a revolver, and drew it about the time he got off his load to open the gate, so that they were both armed with deadly weapons; that when the doctor struck him with the revolver he seized him, and attempted to disarm him, threw him upon the ground, and in the struggle dropped his own revolver, and while he was upon the ground with the doctor he (Chaddock) called upon the respondent, telling him to "Hurra, Will! Kill him, God damn him!" Thereupon De Long alighted upon the ground, Deitz picked up a club, and struck De Long over the head a couple of times, and then picked up the revolver which Barnes had thrown upon the ground, discharged it at De Long, and then turned and ran. De Long pursued him a short distance, and returned to the wagon, and they got on and drove away.

The doctor and Deitz claim that the doctor went to the gate, and spoke to Barnes, raising his hand, saying, "I wish you to give attention; I don't want you to come on this place any more;" and that Barnes got off the wagon and attacked the doctor with a revolver; that

he threw the doctor to the ground, and beat him across the nose with his revolver, threw his own revolver to De Long, who had descended from the load, and that De Long thereupon attacked Deitz, and that Deitz struck him in self-defense. Deitz says that De Long, when he got off of the load, threw a stick of wood at him, which hit him on the leg; that De Long then started towards Barnes and the doctor, and he (Deitz) told him not to interfere with them; that Barnes threw a revolver to De Long, and told him to shoot, calling him an opprobrious name; that De Long took up the pistol and shot, and he (Deitz) picked up a club, and hit him across the arms, and knocked the revolver out of his hands; that he then made for him (Deitz) the second time, and he (Deitz) struck him over the head; that De Long dropped to his knees, and went for Deitz the third time, swearing that he would kill him; and that he struck him again, and he fell to the ground, dropped the revolver, and Deitz picked it up and ran. The lad called Hughson saw a part of the fracas, but was not in position to see Barnes when he had the doctor down. The affray was also witnessed by some ladies, who were sitting upon the porch of a house standing upon the west side of the highway, at a distance of 35 to 40 rods, there being a hollow or declivity in the intervening space.

In the course of the trial the prosecuting attorney undertook to show that the respondent, Deitz, had some trouble with De Long, about three years before the occurrence narrated, at one Tyler's, where they were threshing. This testimony was offered by the prosecutor as bearing upon Deitz's intent at the time this trouble complained of occurred. Objection was made to the introduction of this testimony, and the court ruled that they might show that there had existed trouble between Deitz and De Long three years before, at the time of

the threshing; but he further permitted the prosecutor to show that a threat was made at that time by Deitz, and that he drew a knife on De Long at that time. On cross-examination of De Long, who had testified that he (Deitz) made a threat and drew a knife, it appeared that there was a party of threshers doing work at Mr. Tyler's with a machine; that De Long was employed in hauling grain from the field; that Deitz was employed upon a table or platform cutting bands, and that he was furnished with a knife for that purpose; that during the threshing Barnes and one Chaddock, a son of Dr. Chaddock, were having a fight with each other; that thereupon they stopped the thresher, and the men gathered round the combatants; that Deitz was standing upon this platform with his knife in his hand when De Long came running up towards the combatants, and that Deitz made a threat to do him bodily harm if he put his hands on the combatants; that he had no intention of laying hands on them; that he was standing upon the ground and Deitz upon the platform when he made this threat; that they had had no trouble or words before that time, and never after, until the occasion referred to on the 9th of June.

It was not error for the court to permit specific acts to be given in evidence. It was competent for the prosecutor to show that the previous relations between the parties were not friendly, or that they had had difficulties with each other, and specific acts of that character may be given in evidence between the respondent and the person assaulted or whose property is injured, where intent is essential to the offense charged. *People v. Potter*, 5 Mich. 8; *Dillin v. People*, 8 Id. 366; *People v. Bemis*, 51 Id. 423; *People v. Eaton*, 59 Id. 559.

A motion was made to strike out the testimony of Mr. De Long relative to the occurrence at the threshing,

but the court denied it. We think he erred in this. The testimony of De Long shows that what happened there did not amount even to an assault. It did not show that Deitz had a present intention of inflicting any injury upon him. The threat was conditional, and nothing came of it. The whole testimony with reference to what occurred at the threshing should have been excluded. Deitz did not draw a knife upon De Long. He stood there with the knife with which he cut the bands in his hands, and merely said to De Long when he came up that, if he interfered, he would do him bodily harm. Whart. Crim. Law, §§ 1241, 1242. It did not tend to show that any ill feeling existed between them, and they had worked upon adjoining farms for three years afterwards, and no ill feeling was shown to have been harbored by Deitz against De Long.

After this testimony had been admitted, the prosecuting attorney asked leave of the court to indorse upon the information the names of three witnesses for the purpose of further proving what occurred at the threshing. The court considered the testimony to be given by these witnesses as material, and upon the defendant's objection he granted the permission to place the names upon the information upon condition that the respondent's counsel should have leave to continue the cause over the term if he was not prepared to meet the proposed testimony, and, after consideration, the respondent elected to continue the cause over the term. The prosecuting attorney thereupon declared that he would withdraw the proposition, and go on with the trial, without introducing such testimony, and the trial proceeded. When the defense came to introduce their case, they placed Mr. Deitz upon the stand as a witness, and the respondent's counsel, instead of relying upon the exceptions which he had taken to the introduction of the

threshing-machine episode, examined Mr. Deitz upon that topic, who admitted that there was a fight there between Chaddock and Barnes; that he had a knife in his hand which he used for cutting bands; that De Long was present; but denied that he made any threats to do him bodily harm. After the defense closed their testimony, the prosecutor placed two of the witnesses, whose names he requested to have indorsed upon the information, upon the stand for the purpose of proving what took place at the time of the threshing, between Deitz and De Long. Respondent's counsel objected to the testimony, but the court permitted it, on the ground that the prosecutor could put on witnesses to deny what Deitz said about it.

We think the court erred in this. As before stated, what occurred at that time was entirely immaterial, as shown by the witness De Long, and when Deitz was brought upon the stand, and simply denied it, it should have rested there. The prosecutor could not introduce such testimony by way of impeaching Deitz. The testimony, if admissible at all, should have been introduced as a part of his affirmative case, and could not be brought in by way of rebuttal, if it was material testimony, nor by way of impeachment, if it was immaterial. *People v. Quick*, 58 Mich. 321; *People v. Hillhouse*, 80 Id. 580.

The next error to which attention is called is the refusal of the prosecuting attorney to examine Claude Hughson, an eye-witness of the affray, and to elicit what he knew of the transaction. Claude Hughson was not at first called by the prosecuting attorney, and, upon the suggestion of counsel for the respondent that it was the duty of the prosecuting attorney to place all eye-witnesses of the affray upon the stand, the prosecutor called Claude Hughson, and he was sworn, and some questions asked him by the circuit judge, but nothing as to the circumstances of the affray. The prosecuting attorney

declining to examine. him upon that point, the court informed counsel for respondent that he could examine the witness if he chose to. He declined to do so at that time, and alleges error upon the ruling of the court, claiming that the prosecuting attorney should have found out from the witness all that he knew about the transaction.[1]

Defendant's objection may be considered also with reference to the further errors' alleged, that the prosecuting attorney declined to call Dr. Chaddock, Sarah Bennett, Rhoda Bennett, and Jennie Bennett, who, it was claimed, were eye-witnesses of the transaction, Dr. Chaddock being present and taking a hand in the affray, and the other persons, it is claimed, witnessing the affray from the stoop of the Bennett house. It appears that these witnesses were all present in court, and that the prosecuting attorney declined to call them.[2]   They were all competent

---

[1] The boy was 13 years of age, and his name was not indorsed on the information, and the examination by the court was preliminary, and evidently designed to test his competency, and at its conclusion the following colloquy occurred between the court and the counsel, as shown by the record:

" *The Court:* You may examine him.

" *Prosecuting Attorney:* I don't think I care to ask him any questions, if the court please.   I want to treat the case entirely fair, but I would not have put the boy on the stand even, if I had not been compelled to do it.   He is a bright, competent boy, but I don't care to ask him any questions.

" *The Court:* You may examine him if you care' to.

" *Respondent's Counsel:* I want to insist that the prosecuting attorney should try this case fairly, and get from this boy, Claude Hughson, what he knows of this transaction.

" *The Court:* He says he has no questions to ask him. I cannot compel him to ask him questions.   Under the circumstances you may examine him.

" *Respondent's Counsel:* I will waive cross-examination of him at present, but I want to save an exception to the refusal of the prosecuting attorney,—to the holding of the court to compel the prosecutor to ask the witness such questions as will elicit from him fairly what he knows about the matter.

" *The Court:* That is all, young man."

[2] The record shows the following discussion between the court and counsel:

" *Respondent's Counsel:* The return of the examination taken before the justice shows that Dr. Chaddock, Claude Hughson, Sarah Bennett, Rhoda Bennett, and Jennie Bennett were all wit-

witnesses. It is true that Dr. Chaddock had been complained of, but he was not jointly complained of, nor informed against with the respondent, Deitz. We have heretofore held that it is not correct practice to compel the defense, and not the prosecution, to call witnesses present at the occurrence for which the party is upon trial. *Maher v. People,* 10 Mich. 225; *Hurd v. People,* 25 Id. 415; *Thomas v. People,* 39 Id. 312; *People v. Davis,* 52 Id. 573; *People v. Swetland,* 77 Id. 57. It was said in *Wellar v. People,* 30 Mich. 22:

---

nesses of this transaction, outside of the parties called, and they are present in court. I am not aware that the prosecuting attorney has made any effort to get them.

"*The Court:* There is no evidence here yet to show that the witnesses Bennett were very near the parties.

"*Prosecuting Attorney:* The evidence shows that they were 40 rods away.

"*Respondent's Counsel:* They were examined, and gave their evidence as to this affray, and were very much nearer than the one you did call, and saw a great deal more.

"*The Court:* I think it the duty of the prosecuting attorney to call the young man. I don't think it is his duty to call Dr. Chaddock. The reasons for it already appear; that the doctor, the prosecution is pending against him for taking part in this affray, and that he is present in court, and sitting by counsel for the defense, and has been prompting him in this examination, all of which is proper. So that you may act upon that suggestion."

After the examination of Claude Hughson, and his dismissal from the stand, as shown in the preceding foot-note, the following proceedings were had regarding the other proposed witnesses, whose names were not indorsed upon the information:

"*Respondent's Counsel:* I want, if the court please, before leaving this branch of the case, to ask the court to require the prosecuting attorney to call Dr. Chaddock, and I suppose the ruling is the same.

"*The Court:* I have already ruled on that.

"*Respondent's Counsel:* I save an exception to that. And I also ask that the prosecuting attorney be required to call all witnesses of this affray,—Sarah Bennett, Rhoda Bennett, and Jennie Bennett, who were all witnesses of this transaction, as appears by the testimony of the return.

"*The Court:* From your statement of the testimony, I understand it to be this: That they were not at the immediate place of the occurrence, but were some 35 rods, you say, about, from it?

"*Respondent's Counsel:* Yes, sir.

"*The Court:* And saw it from that distance?

"*Respondent's Counsel:* Yes.

"*The Court:* I will decline to order them called by the prosecuting attorney."

"The fact that the name of a witness is indorsed upon the information does not of itself involve any necessary obligation to do any more than have the witness in court ready to be examined."

And it was said that, where a person is present at the time the offense was committed, and there is no dispute about the fact of presence, the only objection then will be that he may not be favorable to the prosecution. But this is no answer to the people's not calling him as a witness, any more than it would be if the subscribing witness stood in a similar position. The public prosecutor is not the plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty, and he has not the right to suppress testimony, and the fact that he is compelled to call these witnesses, when he may not always find them disposed to frankness, entitles him, when it appears necessary, to press them with searching questions. And it was further said:

"And, if such a witness need not be called by the prosecution, the defense cannot impeach him, and must either call him, and run the risk of finding him against them, or, if they fail to call him, be prejudiced by the argument that they have omitted to prove what was in their power, and must have done so because they dared not call out the facts. There is no fairness in such a practice, and a prosecutor should not be permitted to resort to it. He is not responsible for the shortcomings of his witnesses, and he is responsible for any obstacle thrown in the way of eliciting all the facts."

We think the better rule is that it is incumbent upon the prosecutor not only to have the witnesses present in court, but to have them sworn in behalf of the people, and he may then examine them much or little, as he chooses. It affords the defense an opportunity to cross-examine without prejudicing their case by the bias of the wit-

ness, if he should have any. In this case respondent was compelled to call such eye-witnesses of the transaction as the prosecutor declined to call, and he placed upon the stand and examined Dr. Chaddock, Sarah and Rhoda Bennett, but did not place upon the stand Jennie Bennett. With respect to this witness, the following appears in the record, Mr. Day being the prosecuting attorney:

"*Mr. Day:* Are you going to call Jennie Bennett?

"*Mr. Smith:* Well, I have not.

"*Mr. Day:* I would like to have this return in evidence, so far as the testimony is concerned that I called Dr. Chaddock's and the boy's attention to, and also as showing that Miss Bennett was sworn as a witness on the examination on behalf of the respondent, and gave testimony there. Do you object?

"*Mr. Smith:* I think I shall, as incompetent and immaterial.

"*The Court:* What does the objection go to? What particular statement?

"*Mr. Smith:* It goes to the statement as to their attendance there?

"*The Court:* As to that part of it, I shall sustain the objection.

"*Mr. Day:* It already appears from the testimony in this case of Mrs. Bennett that Jennie Bennett is present here in court.

"*Mr. Smith:* I want to object. If the counsel wants to state anything in that regard, he can state it to the court. His making a statement of that kind is improper, and I want to except to it.

"*Mr. Day:* The testimony here shows from Mrs. Bennett that Jennie is here attending this trial in the courtroom. This return says she was sworn as a witness. The testimony shows she was present with these people on this place that afternoon when they claim to have seen this transaction. They do not call her. I want to have this shown here, so that I can comment on that in the argument of the case. This fact ought to appear, and what her testimony is.

"*Mr. Smith:* I want to except to this statement of the prosecuting attorney, and ask the court to say to the

jury that it is improper for him to make such a statement.

" *The Court:* If the witness is here, she may be called by either side, if either side wants her.   I do not think that I ought to admit evidence that she has given upon the examination to be read or commented upon.   The other part of the statement I will.   The statement of what the return contains of testimony given by witnesses who had been sworn, and which their attention has been called to, I will admit in evidence."

We think it was incompetent for the prosecuting attorney to comment upon the fact that Jennie Bennett had been sworn as a witness upon the examination, or was there in court, and was not called by the respondent. As before stated, if she saw anything of the affray between the respondent and De Long, it was the duty of the prosecuting attorney to call her, and his omission to call her or examine her was as much a subject for comment as the respondent's not calling her.

Another error assigned is the ruling of the court in permitting the witness Alexander Ferguson and others to testify concerning observations made from the Bennett house nearly two months after the affray. It appears that some two months or more after the affray this witness Ferguson and other witnesses went to the place and made observations, and some of them stationed themselves upon the stoop of the Bennett house, while others went across to the barn, put the wagon into position where Barnes said it was at the time of the affray, and then two of them lay upon the ground. The witnesses testified that from the stoop they could not see them on the ground on account of obstructions, consisting of fences, the wagon, woods, and other things; and that they also asked Mrs. Bennett as to the location of the wagon at the time she observed the affray, and that she designated its position. This testimony was offered for the purpose of showing that the witnesses who testified

to seeing the affray from the stoop could not possibly have seen it. To make such testimony admissible as impeaching evidence, it must first be shown that the location and all the surroundings were in the same identical condition they were in when the occurrence about which the witnesses testified happened. This foundation was not laid in this case. Such testimony was commented on in *Klanowski v. Railway Co.*, 64 Mich. 279. We think the testimony of these witnesses should have been excluded, for the reason that it was not shown that no change had taken place in the surroundings of the location between the time when the affray occurred and the time when these observations were made.

Errors are also assigned upon the charge of the court. We do not deem it necessary to discuss them, as the charge was eminently fair and proper, and stated the rules of law correctly.

The other errors assigned are overruled. They are not of sufficient importance to discuss.

The conviction must be set aside, and a new trial ordered.

The other Justices concurred.

