## THE PEOPLE v. WILLIAM D. C. GERMAINE.

*Criminal law—Evidence—Res gestae witness—Duty of people to call.*

1. Where, in a prosecution for assault with intent to commit the crime of murder, the complaining witness testifies that, at the time the shot which inflicted the injury complained of was fired, but one person aside from the respondent and himself was in the room where the shooting occurred, and that he (the witness) did not see the shot fired, and the evidence as to who fired it is purely circumstantial, it is the duty of the prosecuting attorney to call *and examine* said third party as a witness.[1]

---

[1] For cases bearing upon the question of the duty of the people to introduce in criminal cases the testimony of *res gestae* witnesses, see note at the end of the opinion herein; and as to indorsing names of witnesses on information, see *People v. Machen, ante,* 401, and note.

2. The non-performance of this duty is not excused by the fact that said third party is a sister of the respondent, it also appearing that she was at the time of the assault the fiancé of the complaining witness.

Exceptions before judgment from Grand Traverse. (Corbett, J.) Argued April 26, 1894. Decided September 25, 1894.

Respondent was convicted of an assault with intent to commit the crime of murder. Conviction set aside, and new trial ordered. The facts are stated in the opinion and in the foot-notes.

*Pratt & Davis,* for respondent.

*A. A. Ellis,* Attorney General, and *W. H. Foster,* Prosecuting Attorney, for the people.

McGRATH, C. J. Respondent was charged with an assault upon one Ramsdell, with intent to commit the crime of murder. Ramsdell did not see the first shot fired, and the evidence as to who fired that shot was purely circumstantial.[1]

The rule that the prosecution cannot properly claim a conviction upon evidence which expressly or by implication shows but a part of the *res gestae* or whole transaction, if it appears that the evidence of the rest of the

---

[1] Ramsdell testified that on the day of the shooting he was eating supper at the house of respondent's mother; that respondent ordered him to leave the house; that he at first declined to go, but finally went into the sitting-room, where he was followed by respondent and his sister; that the three were the only occupants of the sitting-room; that witness passed into the parlor, and, just as he was opening the door leading to the street, he received a bullet wound in his shoulder; that respondent's sister went with witness almost to the door, and then ran back, and witness saw her take hold of her brother, and that this occurred about the time the shot was fired.

transaction is attainable, and that all the witnesses present at the transaction should be called for the prosecution, unless it appears that the testimony of those not called would be merely cumulative, should certainly be applied in a case like the present. The court instructed the jury that their verdict—

" Must be either that the defendant is guilty of assault with intent to commit the crime of murder, or that the defendant is guilty of committing an assault and battery, or an acquittal."

All that occurred prior to the shooting was material, as determining the questions submitted, and the character of the act. The only witness called respecting these occurrences was the assaulted party. *Maher v. People,* 10 Mich. 212; *Hurd v. People,* 25 Id. 415; *Wellar v. People,* 30 Id. 16; *Thomas v. People,* 39 Id. 309; *People v. Davis,* 52 Id. 569; *People v. Swetland,* 77 Id. 53; *People v. Deitz,* 86 Id. 419.

The duty of the prosecuting attorney is not discharged with the mere production of the witness.[1] As is said in *People v. Swetland:*

" It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good ·excuse for not doing so."

In *Thomas v. People,* 39 Mich. 309, a saloonist fired a pistol through his door in trying to keep a disorderly crowd out. He was charged with an assault with intent

---

[1] At the conclusion of Ramsdell's testimony one of the attorneys for respondent stated to the court that he should insist on the prosecution producing the sister of respondent as a witness before closing their case. The sister was produced and sworn, and the prosecuting attorney declined to examine her as a witness for the people, but stated that the respondent was at liberty to examine her, which action was sustained by the court. The respondent's attorney declined to examine the witness, put in no defense, and declined to argue the case to the jury.

to murder. His son and another man were the only other persons in the saloon when the shot was fired. The stranger had been subpoenaed and called, but did not respond. This Court said:

"No effort seems then to have been made to produce him, and no impediment to doing so is shown. The prosecution now attempt an excuse for this failure by saying that he was only one of several witnesses of the transaction, so that his testimony could only have been cumulative. The excuse, under the circumstances of the case, is not sufficient. Besides the actors in the affray, McCacklin was the only person who appears to have been in position to see what took place inside the saloon, and presumptively he could have given evidence of high importance. In some particulars his evidence, in all probability, would have stood alone."

It is true that the witness Marie Germaine was the sister of the respondent, but she was also Ramsdell's fiancé. Under the circumstances, I do not think that the relationship of Miss Germaine would justify the failure to examine her.

I think that the conviction should be set aside, and a new trial ordered.

The other Justices concurred.

---

RES GESTAE WITNESSES IN CRIMINAL CASES.

For cases bearing upon the question of the duty of the prosecuting attorney to produce the testimony of *res gestae* witnesses in criminal cases, see:

*Homicide.*

1. *Hurd v. People*, 25 Mich. 405, 415, where the prosecution failed to call as a witness a party who was present at the assault which led up to the murder, and took part at that time in stopping the affray. He was afterwards sworn in behalf of the respondent, and it appeared that he heard the conversation leading up to such assault at an earlier stage than a witness who testified for the people regarding the same, and no relationship or complicity with the respondent was shown or pretended. And it was held:

*a*—That the prosecution can never, in a criminal case, properly

claim a conviction upon evidence which, expressly or by implication, shows but a part of the *res gestae* or whole transaction, if it appears that the evidence of the remainder is attainable; that this would be to deprive the respondent of the benefit of the presumption of innocence, and to throw upon him the burden of proving his innocence; that it is the *res gestae* or the whole transaction the burden of proving which rests upon the prosecution, so far at least as the evidence is attainable; that it is that which constitutes the people's case, and as to which the respondent has the right of cross-examination.

*b*—That the English rule goes so far as to require the prosecutor to produce *all* present at the transaction, though they may be near relatives of the prisoner, but doubtless, where the number present has been very great, the production of a part of them might be dispensed with after so many had been sworn as to lead to the inference that the rest would be merely cumulative, and where there is no ground to suspect an intent to conceal a part of the transaction; that whether the rule should be enforced in all cases where those not called are near relatives of the prisoner, or where some other special cause for not calling them exists, need not be here determined, but certainly if the facts stated by those who are called show *prima facie* or even probable reason for believing that there are other parts of the transaction to which they have not testified, and which are likely to be known by other witnesses present at the transaction, such other witnesses should be called by the prosecution, if attainable, however nearly related to the prisoner.

2. *Wellar v. People*, 30 Mich. 16, 22, where the name of one of two persons present at the occurrence was indorsed on the information, but the defense was compelled to call him as a witness instead of the prosecution. And it was held that the fact that the name of a witness is indorsed on the information does not of itself involve any necessary obligation to do any more than have the witness in court ready to be examined; but in cases of homicide, and in others where analogous reasons exist, those witnesses who were present at the transaction, or who can give direct evidence on any material branch of it, should always be called, unless, possibly, where too numerous.

3. *People v. Coffman*, 59 Mich. 1, holding that where the homicide charged is shown by two unimpeached eye-witnesses, and is not denied by the respondent, who defends on the ground of drunkenness, he cannot complain for want of more evidence of the *res gestae*, it appearing that others witnessed the killing.

4. *People v. McCullough*, 81 Mich. 25, where three respondents were jointly informed against for manslaughter, and demanded separate trials. The theory of the prosecution was that the

deceased came to his death by being hit with a stone thrown by one of the respondents. No concert of action was shown between them, and, at the time the stone was thrown, the other two were some distance from the one who threw it, and were nearer to the deceased, and, according to the testimony of some of the witnesses, had their hands raised, but the witnesses did not testify that they struck the deceased. The testimony failed to show any marks or bruises upon the person of the deceased. And it was held that it was the duty of the prosecution either to put the two respondents on trial first, or to tender them as witnesses for the people on the trial of the third respondent, and thus enable him to cross-examine them, if he so desired.

5. *People v. Harris*, 95 Mich. 87, holding that where the names of the father and mother of the respondent are indorsed on the information, and the mother, who claims to have witnessed the entire affray, is called and testifies on behalf of the people, the rights of the respondent are fully protected by the prosecution calling the father, who had not witnessed the beginning of the affray, and having him sworn, and by his examination by the counsel for the respondent.

### Assault With Intent to Mur̈der.

*Thomas v. People*, 39 Mich. 309, 312, where the assault was committed by the shooting of one who was attempting with others to enter respondent's saloon. It appeared that respondent, his son, and a stranger were alone in the saloon at the time of the shooting. The stranger had been subpoenaed on the part of the people, and, when called, failed to respond. No effort was made to produce him, and no impediment to doing so was shown. The defense asked that the prosecution be required to place him upon the stand for examination, which request was refused. And it was held that the excuse attempted to be made for failing to produce the witness, *i. e.*, that his testimony could only have been cumulative, under the circumstances of the case, was insufficient; that, besides the actors in the affray, he was the only person who appeared to have been in a position to see what took place inside the saloon; that presumptively he could have given evidence of high importance, and in some particulars his evidence, in all probability, would have stood alone.

### Assault with Intent to do Great Bodily Harm less than Murder.

*People v. Deitz*, 86 Mich. 419, where the names of certain witnesses, who were shown by the preliminary examination to have witnessed the affray at a distance of from 35 to 40 rods, were not indorsed on the information, and the court declined to require the prosecuting attorney to call them on the request of the respondent's counsel, although present in the court-room, and they were

afterwards called and sworn on behalf of the respondent. And it was held:

*a*—That it is not correct practice to compel the defense to call witnesses present at the occurrence for which the party is on trial.

*b*—That it is incumbent upon the prosecuting attorney not only to have such witnesses present in court, but to have them sworn in behalf of the people, and he may then examine them much or little, as he chooses; thereby affording the respondent an opportunity of cross-examination without prejudicing his case by the bias of the witness, if he should have any.

*c*—That it is incompetent for the prosecuting attorney, after refusing to call such a witness, to comment upon the fact that he was sworn upon the preliminary examination, or that he was present in court, and was not called by the respondent.

### Assault and Battery.

*People v. Kenyon*, 93 Mich. 19, holding that where the only eye-witnesses were the respondent and his wife, the complaining witness and his son, and a fifth party who saw a portion of the affray, such party is an important witness, and should be produced by the people, and the court has power to compel the prosecuting attorney to call such party.

### Burglary.

*People v. Gordon*, 40 Mich. 716, where the only evidence connecting respondent with the offense was his arrest with a satchel containing the articles taken from the burglarized building. The prosecution had in court a person whose name was indorsed on the information, and who had been convicted of the burglary for which respondent was being tried, but failed to call him as a witness. And it was held that the suppression of this positive testimony, which on every consideration of justice the prosecution was bound to produce, entitled the respondent to every inference that could be drawn from it.

### Larceny.

1. *People v. Long*, 44 Mich. 296, where an officer testified that he saw respondent's father search his son immediately after the theft, and that he took from him what appeared to be a gold piece, and put it in his own pocket. Respondent's counsel moved to strike out this testimony unless the prosecution called the father as a witness. And it was held that the testimony was admissible as a part of the *res gestae;* that the failure to call the father was not, under the circumstances, erroneous; that there was no claim that he knew anything more about the transaction than the finding of the gold piece; that it appeared that he was present in court, and active in aiding the defense; that his position in regard

to the facts was not such as to make him a necessary witness for the people to enable respondent to be protected against a false accusation, and his relation to the defense made it still less important.

2. *People v. Wolcott*, 51 Mich. 612, 618, where the name of respondent's wife was indorsed on the information, and counsel for the respondent insisted that she should be called by the people, so that the defense might have an opportunity for cross-examination. And it was held that the court was correct in declining to order this, the relationship of the witness to the accused being sufficient for excusing her.

3. *People v. Henshaw*, 52 Mich. 564, where, in a prosecution for larceny from the person, the disputed question of fact was as to the identity of the respondent as the one who committed the offense. As the prosecution was about to rest the case, the counsel for the respondent requested that the prosecution be directed to call as a witness a person then in the court-room, whose name was indorsed on the information, and who helped to arrest the robbers. And it was held that the refusal of the court to grant the request was not error; that it was not claimed that the proposed witness was present at the robbery, and upon the question of identity he was no more qualified to testify than any other person who had acquaintance with the person to be identified.

## Receiving Stolen Property.

*People v. Goldberg*, 39 Mich. 545, where respondent was convicted upon the testimony of two of the thieves, and of a witness who testified to conversations with the respondent which corroborated the testimony given by the thieves about respondent's reception of the property. The testimony of two other witnesses tended to show that the goods were found at the house of respondent's brother-in-law. The brother-in-law was in court, but was not called by the people. Respondent's counsel asked the court to require the prosecution to call the brother-in-law as a witness, which the court refused to do. And it was held that the offense consisted in the guilty reception of the property; that the evidence for the people was aimed to make out that this was a distinct personal act, identified by direct proof, and that it was accomplished and complete apart from any subsequent deposit at the brother-in-law's; that it was not pretended that the brother-in-law was present at the fact, and the evidence imported that he was not; and that the case did not, therefore, impose any duty upon the prosecution to call the brother-in-law as a witness.

## Uttering Forged Instrument.

*People v. Swetland*, 77 Mich. 53, where the persons whose names purported to be affixed as witnesses to the forged instrument were

not produced, nor their names indorsed on the information, and no showing was made that the names were fictitious. And it was held that their testimony was a necessary part of the people's case, which could not be omitted without good excuse.

### Keeping House of Ill-fame.

*People v. Wright*, 90 Mich. 362, where it appeared that two men, one of whom was an officer, visited the house, and the officer testified to conduct on the part of his companion and an inmate tending to show acts of prostitution. The name of the companion was not indorsed on the information, nor was he sworn as a witness on the preliminary examination. And it was held that the refusal of the trial court to compel the prosecuting attorney to call him as a witness was not error, the transaction testified to not constituting the offense charged, and only being one of the circumstances in proof.