Argued 6 Oct.; decided 24 October, 1898.

## STATE v. BARRETT.

[54 Pac. 807]

HOMICIDE—OPINION EVIDENCE.—The fact that a witness has seen the bodies of several deceased persons in the positions where they fell after being shot does not render him an expert on falling bodies.

OPINION EVIDENCE—TRIAL.—The opinion of a witness that the body of the deceased at the time he saw it did not lie in the position in which it fell when the person was shot is not competent evidence, for it appeared that the position of the body and the surroundings of the place could all be accurately described, and under such circumstances the jury are to draw their own conclusions: First Nat. Bank v. Fire Association, 33 Or. 172, distinguished.

WITNESSES—DUTY OF DISTRICT ATTORNEY.—The prosecuting attorney is not required to call as witnesses in a criminal case all the persons present at the commission of the alleged crime, or any particular number of them whose attendance can be procured.

From Multnomah : MELVIN C. GEORGE, Judge.

George Barrett was convicted of manslaughter and appeals.

REVERSED.

For appellant there was a brief and an oral argument by Mr. Wilson T. Hume.

For the state there was a brief and an oral argument by Messrs. Cicero M. Idleman, attorney-general, Russell E Sewall, district attorney, and Roscoe R. Giltner, deputy district attorney.

MR. JUSTICE BEAN delivered the opinion.

The defendant was convicted of the crime of manslaughter, for shooting and killing one Williams in a saloon conducted by himself and one Levison, and brings this appeal to reverse the judgment. The following statement of the facts will suffice to explain the alleged errors : On the morning of the homicide, in response to

a summons by telephone, Captain Stapleton, of the police force accompanied by an officer, went to the saloon indicated, and there found the defendant, who told Stapleton that he had shot a man, and that his body was then in a back room of the saloon. Stapleton, accompanied by the defendant, went into the room referred to, where they found the body of the deceased stretched out at full length on its back on the floor, in front of the door ; the feet about twelve or fifteen inches apart ; the hands and arms thrown out on either side about eighteen or twenty inches from the body ; and between the right arm and body a Colt's revolver was lying on the floor. After describing the situation and appearance of the body, and the condition in which he found the room, and testifying that he had seen the bodies of two or three persons in the position in which they had fallen after having been shot, Stapleton was permitted, over the defendant's objection and exception, to testify that in his opinion the body of the deceased, at the time he first saw it, did not lie in the position in which it fell when the fatal wound was inflicted ; and this ruling is assigned as error. That the admission of this evidence was error can hardly admit of serious doubt. The witness Stapleton was not an expert, if, indeed, the subject was one upon which an expert could have testified. The fact that he had previously seen the bodies of two or three persons after they had been shot would not make him such : *Rash* v. *State*, 61 Ala. 89.

And the question was not a matter upon which the opinion of a nonexpert is admissible. As a general rule, a witness must testify to facts, and not conclusions or opinions. It is the duty of the jury, and not the witness, to draw inferences from the evidence, and form opinions from the facts presented. The cases in which the opinions of witnesses are allowed constitute exceptions to this

rule, founded on the ground of necessity, because the facts cannot be presented or depicted to the jury precisely as they appeared to the witness, and it is impracticable, from the nature of the subject, for him to relate the facts without supplementing their description with his conclusions : *First National Bank* v. *Fire Association*, 33 Or. 172 (53 Pac. 8). Such are questions as to the identity of persons or things ; the age, health, physical condition, and appearance of a person ; the lapse of time ; the dimensions and quantities of things ; and many other instances in which it is impossible to detail the facts without the use of language which necessarily implies the conclusion or opinion of the witness : Lawson on Expert Evidence, 46 ; Rogers on Expert Testimony, 6 ; *Hackett* v. *Baltimore, etc., Railway Co.*, 35 N. H. 390 ; *Parker* v. *Boston, etc., Steamboat Co.*, 109 Mass. 449 ; *Com.* v. *Dorsey*, 103 Mass. 412. But the books all agree that such opinion evidence is never admissible if all the pertinent facts can be sufficiently described and detailed to the jury so as to enable it to draw its own inferences and conclusions therefrom : 7 Am. & Eng. Enc. Law, 493, and cases there cited ; *Graham* v. *Pennsylvania Co.*, 139 Pa. St. 149 (12 L. R. A. 293, 21 Atl. 151); *Manufacturer's Indemnity Co.* v. *Dorgan*, 7 C. C. A. 581 (58 Fed. 945). And this case comes clearly within the latter rule.

This last case ( an action on an insurance policy) is very much in point. The dead body of the assured was found lying in a brook, with the face downward, and submerged in six inches of water ; and the defense was that he died from disease, and not accident. On the trial the court refused to permit the company to ask of the witness who found the body in the water : " If he had been standing, in your judgment would it have been possible for him to have fallen in the water, in the position in which you found him ? " This ruling was sus-

tained by the court of appeals, Mr. Justice TAFT saying the question "asked for an opinion of the witness on facts which it was quite possible for the witness to have detailed to the jury, so that the jury might have drawn its own inference. That there are cases where the judgment of a witness as to distance and other circumstances may be directly asked him, is true, but such questions are not permissible when it is practicable to draw out with exactness the data upon which such judgment must be founded." So, also, in the case at bar there was no difficulty whatever in sufficiently describing the situation and position of the body of the deceased, and the condition of the room in which it was found, to enable the jury to draw its own inference as to whether the body had been moved after having fallen from the effects of the fatal wound, and there was no necessity for supplementing such description by the opinion of the witness upon that question. It was therefore error to permit it to be given, and in view of the fact that the contention of the state throughout the trial was that the homicide occurred in the barroom of the saloon, and that the body had been carried by the defendant and his friends to the back room, and placed in the position in which Stapleton found it before they telephoned for the police, the error cannot be said to have been harmless. The question as to whether the body of the deceased had been moved after the homicide was a very important, if not a vital, question in the case; and it was mischevious error, therefore, to permit the state to throw the weight of the opinion of a witness, and especially one of the standing and character of Stapleton, in favor of its theory. The jurors should have been left to draw their own inferences and conclusions upon this question from the evidence, uninfluenced or unbiased by the opinions of others. For this reason the judgment of the court below must be re-

versed, and a new trial ordered. But as there are other questions in the case, which may arise on another trial, it is thought proper to notice them briefly at this time.

The district attorney having closed the case for the state without calling any of the persons who were in the saloon at the time of the homicide, on the ground that they were the associates and employees of the defendant, and in his opinion their testimony would be unworthy of belief, although one of them was then in custody in default of an undertaking to appear and testify on behalf of the state at the trial, and another was on bail for that purpose, the defendant's counsel moved the court to require such persons to be called as witnesses for the state. The court declined to do so, and the defendant excepted. The parties referred to were then called by the defense, and testified, and the ruling of the court in not compelling the state to produce them on the stand is assigned as error. There is a diversity of judicial opinion as to whether, in a criminal case, the prosecuting officer is compelled to call as witnesses all the persons present at the commission of the alleged crime. There are some early English cases which seem to lay down the rule with more or less distinctness to that effect: *Reg.* v. *Holden*, 8 Car. & P. 606; *Reg.* v. *Chapman*, 8 Car. & P. 558; *Reg.* v. *Stroner*, 1 Car. & K. 650; Rosc. Cr. Ev. *139. And in this country it is the rule, in Michigan and Montana, that the prosecuting officer is bound to show the *res gestæ*, or entire transaction, by calling all the obtainable witnesses present at the time, unless it appears that the testimony of those not called would be merely cumulative: *People* v. *Germaine*, 101 Mich. 485 (60 N. W. 44); *Territory* v. *Hanna*, 5 Mont. 248 (5 Pac. 250); *State* v. *Metcalf*, 17 Mont. 417 (43 Pac. 182).

But this doctrine is denied and repudiated, and we think rightfully, by a great majority of the courts in

which the question has come up for adjudication : *State* v. *Martin,* 2 Ired. 101 ; *Selph* v. *State,* 22 Fla. 537 ; *State* v. *Eaton,* 75 Mo. 587, 593 ; *Bozeman* v. *State,* 34 Tex. Cr. R. 503 (31 S. W. 389); *Kidwell* v. *State,* 35 Tex. Cr. R. 264 (33 S. W. 342) ; *Williford* v. *State,* 36 Tex. Cr. R. 414 (37 S. W. 761) ; *Morrow* v. *State,* 57 Miss. 836 ; *Carlisle* v. *State,* 73 Miss. 387 (19 South. 207) ; *State* v. *Cain,* 20 W. Va. 679. It probably came into use in England at a time when the right of a defendant in a criminal case to be represented by counsel, or to have witnesses appear and testify in his behalf, was either denied entirely, or very much abridged. Under such circumstances, it was, of course, important that the prosecution be compelled to prove the entire transaction, and to call all the witnesses present at the time, whether they would testify for or against the defendant. But these restrictions upon the rights of a defendant do not, and never did exist in this country. Here the right of the accused to appear by counsel, and to have compulsory process for obtaining witnesses in his favor, is everywhere recognized, and generally guaranteed by the fundamental law. There is therefore no necessity for requiring the state to call all the persons who were present when the offense was committed, or any particular number of them. The rights of the defendant are not in any way abridged by a failure to do so. He has the assistance and advice of counsel selected by himself, if able to employ one, and, if not, appointed by the court, and compulsory process for obtaining witnesses at the public expense.

In addition to this, the state is bound to make out its case beyond a reasonable doubt ; and if the prosecuting officer does not call sufficient witnesses for that purpose, or if any unfavorable inference can be drawn from his. failure to call any witness, the defendant is not likely to suffer by the omission. And if he calls only such wit-

nesses as are favorable to the state, the defendant has a right to call any others which he may suppose will relate the facts favorable to him. It does not seem to us, therefore, that the state should be compelled to call and vouch for a witness, even though it be evident that he knows all about the facts, when the prosecuting officer, acting in good faith, and under his official oath, is of the opinion that he will, by false swearing, or by the concealment of material facts, attempt to establish the innocence of the accused. As said by the supreme court of Missouri in *State* v. *Eaton*, 57 Mo. 587 : "We see no reason why the state's attorney, acting under his official oath, and as much bound, as the representative of the state, to protect the innocent as to bring the guilty to justice, should not be left to his discretion as to what number and character of witnesses he will call for the state to prove an alleged crime against the accused. If others than those called by him know facts favorable to the accused, he may have process to compel their attendance ; and, if they come to speak the truth, a cross-examination by the state's attorney can be a matter of no consequence to them."

It is true, the prosecuting officer is supposed to be, and should be, wholly without bias or prejudice. His sole duty is to see that the laws are enforced, and the guilty punished. He is as much bound, as the law officer of the state, to protect the innocent as to punish the guilty ; and if, therefore, at any time he should, unmindful of his duty, endeavor to suppress evidence, the trial court would be justified in requiring the production by him of the evidence sought to be suppressed, although it might be more favorable to the defense than to the state. And a refusal to exercise such discretion would probably be ground for reversal. But no such question is presented here. There is no claim that the district attorney was

endeavoring to suppress testimony, or to prevent any or all witnesses present at the time of the commission of the alleged crime from appearing and testifying on the trial.  The simple question was whether such witnesses should appear for the state, and thus not only give the defendant the right to cross-examine them, but deny to the state the right of impeaching them if it saw proper, or whether the district attorney might, in his judgment, refuse to call them, and thus compel the defendant to put them on the stand if they were to testify in the case at all.  The witnesses were subsequently called by the defense, and testified fully in the case, so that defendant had the full benefit of their testimony, and could not possibly have been injured by the failure of the state to call them in its behalf.

There are some other questions in the case, but as they are of minor importance, and may not arise on another trial, we shall pass without considering them at this time.  The judgment of the court below is reversed, and the cause remanded for a new trial.

REVERSED.

Decided 14 September, 1898.