PEOPLE *v.* BLAZENZITZ.

1. CRIMINAL LAW—HOMICIDE—WITNESSES—FAILURE TO INDORSE—
STATUTES.
   In a prosecution for homicide, the failure of the prosecution to indorse upon the information the names of two witnesses who saw the murderers running from the scene of the crime, and to produce them in court at the trial, *held*, reversible error; being a positive invasion of a substantial right of defendant under 3 Comp. Laws 1915, § 15761.

2. SAME—EVIDENCE—CREDIBILITY OF WITNESSES FOR JURY.
   The failure to indorse and produce said witnesses is not excused because their testimony might be unfavorable to the prosecution, nor because they made conflicting statements; the credit to be given to their testimony being for the jury.

Error to Wayne; Hunt (Ormond F.), J. Submitted October 15, 1920. (Docket No. 118.) Decided December 21, 1920.

Joseph Blazenzitz was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Jackson. Reversed.

*Maurice E. Fitz-Gerald* (*Hollis Harshman,* of counsel), for appellant.

*Matthew H. Bishop,* Prosecuting Attorney, and *Robert T. Speed,* Assistant Prosecuting Attorney, for the people.

CLARK, J. On the evening of December 14, 1918, Thomas Houghton was shot in a bank at Redford. He died the following day. Defendant was convicted of murder in the first degree. The case is here on error.

Error is assigned on the refusal of the trial court to grant a new trial on the ground of newly-discovered evidence and because of the failure of the prosecuting attorney to indorse upon the information the names of *res gestæ* witnesses known to him to be such prior to the time of trial, and because of the failure of the prosecution to call and produce such witnesses. There was proof of death and of the cause of death. The evidence of the people was circumstantial. The circumstance and incidents of defendant's arrest were related by police officers, which testimony tended to show that defendant was a man of bad character. Three witnesses testified to having seen defendant loitering in the street near the bank just before the shooting. Bert R. Vincent's place of business was on the street about 80 feet from the bank, the second door to the west and on the same side of the street. He testified that while in his place of business that evening he heard two shots, that a moment or so later two men came running by, that he "ran to the door" "just inside of the door" from which place he saw the men running west on the street, "running away from the bank," and he testified that defendant was one of the men. Defendant, by his testimony and that of three other witnesses, sought to establish an alibi.

It appears from affidavits in support of the motion for a new trial and from those in opposition to it that Joseph Operhall and Eugene Vincent were in the street near the bank at the time of the shooting. Operhall says in an affidavit that, following the shooting, he saw two men leave the bank and that at the time he was near the car track in the street in front of the bank. Vincent says in an affidavit that in an instant or so after the shooting he saw a man run down the steps of the bank and west on the street, and that he also saw another man leaving the bank, and Vincent claims to have been at the time in the street in front

of the bank and to have been pushed aside by one of the men leaving the bank. In their affidavits supporting the motion Operhall and Vincent say in effect that defendant was not one of the men (said by the people to be the defendant and one Norman Shaible) whom they saw there after the shooting.

By the record it appears that neither defendant nor his counsel knew, until after the trial, that Operhall and Eugene Vincent had seen the men leave the bank and had knowledge of important facts in the case. But the prosecution had knowledge of the facts respecting Operhall and Eugene Vincent early in January, 1918. The information was filed February 25, 1918.

Opposing the motion affidavits were filed showing that both Eugene Vincent and Operhall had made contradictory statements respecting the identity of men whom they saw leaving the bank, some of such statements being unfavorable to the defendant. There were affidavits tending to discredit seriously the character and credibility of Operhall. When the motion was argued the testimony of Operhall was taken, but not returned, by which the trial court says that he "apparently contradicted the statements made in the affidavit" filed in support of the motion and claimed that by promises he was induced to make the affidavit. The affidavit of an assistant prosecuting attorney says that in January, 1918, the defendant and Shaible were brought to the office of the prosecuting attorney and were "shown to Eugene Vincent and Joseph Operhall, and that the said Eugene Vincent and Joseph Operhall stated in the presence of this deponent that they were unable to identify the two defendants as the two men they had seen running from the Redford Savings Bank on the night of December 14, 1918." That defendant then learned or was advised that Eugene Vincent and Operhall had knowledge of material facts in

the case is not shown. And although defendant was seen by Operhall on another occasion it is not claimed that he was known by defendant—nor are the affidavits of defendant and his counsel asserting such lack of knowledge on this record controverted. It is pointed out that there was testimony at the trial that just after the shooting Eugene Vincent was in the street in front of the place of business of Bert R. Vincent. Upon this showing it is contended by the prosecution that the motion for a new trial was properly denied, that the testimony of Operhall and Eugene Vincent if produced would have been cumulative merely, that no fact was suppressed, that their production would not have inured to the benefit of the defendant nor changed the result.

The showing of the prosecution might be persuasive and its contention sustained if the motion for a new trial related merely to the question of newly-discovered evidence. The important question of fact on the trial was the identity of the murderers. By the failure of the prosecution to indorse the names of Eugene Vincent and Operhall as witnesses and to produce them at the trial, this being a case of homicide (see *People* v. *Bonker,* 37 Mich. 4), a serious question is presented, for upon this record the fact remains that Eugene Vincent and Operhall saw men leaving the bank following the shooting. These men were the only known persons who saw the alleged murderers leave the bank building, they were the first to see them after the shooting, they observed them at a different time and place than did the witness Bert R. Vincent. And Eugene Vincent had an opportunity to observe one of the alleged murderers at arm's length. The failure to indorse and produce these witnesses is not a mere irregularity. It is a positive invasion of a substantial right of the defendant under the law. See 3 Comp. Laws 1915, § 15761; *People* v. *Hall,* 48 Mich. 487 (42

Am. Rep. 477) ; *People* v. *Price,* 74 Mich. 41; *People* v. *Howes,* 81 Mich. 400. Such invasions might not be very harmful in cases where defendants have the means to employ counsel to discover the facts, and to prepare a defense, but it would be otherwise with the unfortunate and the helpless poor accused of crime, if subjected to the whim of officers, to the suppression of evidence, to conviction on less than the truth. But the right secured by the law is the equal right of all. The invasion of such right is not to be palliated because of the righteous indignation of citizens at the prevalence of crime, nor because this murder was peculiarly atrocious and cowardly.

The failure to indorse and produce these witnesses is not excused because their testimony might be unfavorable to the prosecution—"they were unable to identify the two defendants (defendant and Shaible) as the two men they had seen running from the Redford Savings Bank," nor because they made conflicting statements. The credit to be given to their testimony was for the jury.

Contending that the testimony, if given, would be cumulative, counsel cite *People* v. *Higgins,* 127 Mich. 291. This case is not in point. *Thomas* v. *People,* 39 Mich. 309, is in point. The contention has no merit.

Citing *People* v. *Higgins, supra,* counsel also contend that the failure to indorse and produce Eugene Vincent as a witness is excused by the fact that the defense was informed by the testimony of Bert R. Vincent at the trial that Eugene Vincent was in the vicinity of the bank at the time in question. Bert R. Vincent, as has been stated, in his place of business about 80 feet from the bank, heard two shots and testified:

"Shortly after two men came running by and another young fellow not far behind called to me, 'Oh, Uncle Bert, come on!' That was my nephew (Eugene Vincent). When my nephew called to me, 'Come on,' I ran out the door."

That by this testimony it was revealed to the defendant that Eugene Vincent was a *res gestæ* witness we need not determine. The failure as to Operhall is not excused and it was the duty of the prosecution to indorse the names of both these witnesses known to the prosecution before the trial and to produce them in court at the trial, no obstacle to so doing being shown.

In *Hurd* v. *People*, 25 Mich. 415, it is said:

"But the prosecution can never, in a criminal case, properly claim a conviction upon evidence which expressly or by implication, shows but a part of the *res gestæ*, or whole transaction, if it appears that the evidence of the rest of the transaction is attainable. This would be to deprive the defendant of the benefit of the presumption of innocence, and to throw upon him the burden of proving his innocence. It is the *res gestæ*, or whole transaction, the burden of proving which rests upon the prosecution (so far at least as the evidence is attainable). It is that which constitutes the prosecutor's case, and as to which the defendant has the right of cross-examination; it is that which the jury are entitled to have before them, and, 'until this is shown, it is difficult to see how any legitimate inference of guilt, or of the degree of the offense, can be drawn.'

"The prosecutor in a criminal case is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable. The only legitimate object of the prosecution is, 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object, like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he

must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community."

See, also, *People* v. *Swetland,* 77 Mich. 53; *Maher* v. *People,* 10 Mich. 212 (81 Am. Dec. 781); *Brown* v. *People,* 17 Mich. 429 (97 Am. Dec. 195); *Patten* v. *People,* 18 Mich. 314 (100 Am. Dec. 173); *Meister* v. *People,* 31 Mich. 99; *Wellar* v. *People,* 30 Mich. 16; *People* v. *Gordon,* 40 Mich. 716; *Strang* v. *People,* 24 Mich. 1; *People* v. *McCullough,* 81 Mich. 25; *People* v. *Etter,* 81 Mich. 570; *People* v. *Deitz,* 86 Mich. 419; *People* v. *Henshaw,* 52 Mich. 564; *People* v. *Price,* 74 Mich. 37; *People* v. *Kenyon,* 93 Mich. 19; *People* v. *Germaine,* 101 Mich. 485; *People* v. *Machen,* 101 Mich. 401; *People* v. *McArron,* 121 Mich. 1; *People* v. *Grant,* 111 Mich. 346; Tiffany Criminal Law (4th Ed.), p. 432.

The court erred in denying the motion for a new trial. The verdict and judgment are set aside and a new trial ordered. The defendant is remanded to the custody of the sheriff of Wayne county.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.