PEOPLE *v.* TANN.

1. CRIMINAL LAW—DENIAL OF MISTRIAL—OPINION OF WITNESS—INSTRUCTIONS.
    In prosecution of physician for crime of rape upon patient who had come to him to procure an abortion, the denial of defendant's motion for mistrial after a police officer had stated an opinion as to defendant's claim as to why defendant was prosecuted and court ordered such opinion stricken from the record and jury to disregard it entirely is not stated to be reversible error where conviction is reversed on another ground (CL 1948, § 750.520).

2. INDICTMENT AND INFORMATION—INDORSEMENT OF RES GESTAE WITNESSES.
    It is the duty of the prosecution to indorse on the information all known *res gestae* witnesses if the testimony of such witnesses is reasonably necessary to protect the accused against a false accusation (CL 1948, § 767.40).

3. SAME—INDORSEMENT OF WITNESSES—DISCRETION OF COURT.
    While the application for indorsement of witnesses, either by the prosecution or the defendant, during the trial lies within the sound discretion of the trial court, such discretion is a judicial discretion (CL 1948, § 767.40).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error, § 1191.
[1] Voluntary statements damaging to accused, not proper subject of testimony, uttered by police or peace officer. 8 ALR2d 1013.
[2-5] 27 Am Jur, Indictments and Informations, §§ 43, 46.
[6] 14 Am Jur, Criminal Law, § 163.

4. SAME—INDORSEMENT OF RES GESTAE WITNESSES—EXCUSE—JOINT CHARGE UNDER OTHER INFORMATION—AVAILABILITY OF WITNESS TO DEFENDANT.

Fact that defendant physician, charged with rape upon a patient who had come to him to procure an abortion, had been jointly charged in another information with woman, whom he claimed was a *res gestae* witness because present in room adjoining that in which rape is claimed to have been committed and connected by a door partly open at the time and because defendant could have called her had he so desired, did not excuse indorsement of her name as a *res gestae* witness, where knowledge of her presence was known to prosecution at time information was filed (CL 1948, §§ 750.520, 767.40).

5. SAME—PURPOSE OF RULE REQUIRING INDORSEMENT OF RES GESTAE WITNESSES.

The purpose of the rule requiring the indorsement of all known *res gestae* witnesses is to insure the whole of the *res gestae* and to protect the accused against the suppression of testimony favorable to him (CL 1948, § 767.40).

6. CRIMINAL LAW—DUTY OF PROSECUTION—RES GESTAE.

It is the duty of the prosecution to show the whole transaction involved in a prosecution for crime just as it was, regardless of whether it tends to establish guilt or innocence.

Appeal from recorder's court for the City of Detroit; Krause (Paul E.), J. Submitted October 13, 1949. (Docket No. 82, Calendar No. 44,259.) Decided December 7, 1949.

Henslee Tann was convicted of rape. Reversed and new trial granted.

*Edward N. Barnard,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

SHARPE, C. J.   Defendant, Henslee Tann, was charged, tried and convicted of the crime of rape.[*] The prosecution's witness Frances Lessard testified that she was an unmarried woman of 25 years of age; that on January 21, 1948, she came to Detroit at about 8:45 a. m., and registered at the Tuller Hotel; that she was pregnant and wanted information about the possibility of an abortion; that at 1 p. m., she telephoned Dr. Tann and made an appointment with him for between 4 and 8 p. m.; that at 6 p. m., she was admitted to the premises; that while waiting in the living room she engaged in a conversation with another girl about her 13-months-old baby who was in a play pen in the same room; that in about 10 minutes Dr. Tann asked her to come into the examination room; that there was a discussion about an abortion; that the doctor suggested an examination whereupon she removed her coat and went to the bathroom to produce a sample of urine; that upon her return from the bathroom she was asked to remove her panties and told to lie flat on her back on a table used for the examination; that during the examination the doctor had sexual intercourse with her without her consent; and that she rushed out of the house.   Miss Lessard, after leaving Dr. Tann's office, went to a near-by drugstore where she procured a taxicab and was driven to Receiving Hospital.   At the hospital she was examined by Dr. A. C. Winegar, a member of the Receiving Hospital staff, "for evidence of rape."   He found, "No abrasions or redness of the vulvular skin. * * * No tears or bleeding of the vaginal mucous membranes" and "no genital trauma."

It also appears that during the trial Richard Miller, a police officer, testified as to a conversation he had with defendant in which the following occurred:

---

* CL 1948, § 750.520 (Stat Ann § 28.788).—REPORTER.

"*The Court:* Have you given us the gist of all the questions and answers?

"*A.* No, did not, did more questioning. I stopped there momentarily.

"*Q.* I mean, did it pertain to the same girl?

"*A.* Yes.

"*Q.* What was it?

"*A.* I said, 'Do you mean to tell me that this girl would come down here and lay her soul open to the world—a girl in her position, in order to recover $10 in this day and age?' And I said, 'You're' I said, 'I don't believe you.'"

Whereupon counsel for defendant made a motion for a mistrial. The court denied the motion and instructed the jury as follows:

"*The Court:* Members of the jury, the questions and answers particularly the answers given by this witness in relation to what he told Dr. Tann, and what his opinion was of Dr. Tann's claim, and this witness's opinion as to whether or not Dr. Tann's statement to him was true or untrue, is stricken from the record, and you are instructed to disregard it entirely. Strike it from your minds and do not consider it as having been testimony in this case, because what this witness or any other witness in this case may think about the testimony or statements of anyone else is of no weight whatever. That is for you and you alone. Go ahead."

It appears that Dr. Tann is a colored person and, from pictures introduced in evidence, Jean Carpenter, the lady who was in the doctor's living room with the baby, appears to be a white person. During the cross-examination of defendant he was questioned as to his relations with Jean Carpenter and asked to identify photographs of himself and Jean Carpenter taken at a beach while they were in bathing suits. Over objections the court admitted the photographs, whereupon defendant's counsel made

a motion that Jean Carpenter be indorsed upon the information as one of the people's witnesses. The trial court did not require indorsement of the name of Jean Carpenter as a witness on the information or require her to be produced in court as a witness.

Upon leave being granted, defendant appeals and urges that the trial court was in error in denying defendant's motion to require indorsement of the name of Jean Carpenter on the information as a people's witness and in not requiring her production in court by the prosecutor.

The record shows that the alleged crime of rape was committed on January 21, 1948; the information was filed on February 4, 1948; and the trial began February 15, 1948, before a jury. At the time the motion to indorse was made, the following information was available to the prosecutor. Shortly after Miss Lessard entered the doctor's office, she saw Jean Carpenter there. When Miss Lessard went into the examination room, Jean Carpenter preceded her, picked up some pictures in the room used as an office, and returned to the living room. Prior to the examination, Dr. Tann told Jean Carpenter to "keep her ears and eyes open, because of the peculiar reactions of this particular patient." During the examination he left the door leading into the examination room partly open and Dr. Tann talked with someone in another room. As Miss Lessard made her exit from the office she nearly bumped into Jean Carpenter. It also appears that prior to the trial in this cause another charge was pending against Dr. Tann and Jean Carpenter; and during the trial, the trial judge stated that he could produce Jean Carpenter "very quickly."

The statute involved is CL 1948, § 767.40 (Stat Ann § 28.980), and reads as follows:

"All informations shall be filed during term in the court having jurisdiction of the offense specified

therein, after the proper return is filed by the examining magistrate by the prosecuting attorney of the county as informant; he shall subscribe his name thereto, and indorse thereon the names of the witnesses known to him at the time of filing the same. Names of other witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."

Under the above statute we have held that it is the duty of the prosecution to indorse on the information all known *res gestae* witnesses if the testimony of such witnesses is reasonably necessary to protect the accused against a false accusation. See *People* v. *Bartlett,* 312 Mich 648.

In *People* v. *Blazenzitz,* 212 Mich 675, one Thomas Houghton was shot and killed in a bank and defendant was convicted of such murder. In support of a motion for a new trial, the defendant presented affidavits that Joseph Operhall and Eugene Vincent were in the street and near the bank at the time of the shooting and this information was known to the prosecutor at least a month before the trial. Neither of the above persons was called as a witness by the prosecutor. We there said, "The failure to indorse and produce these witnesses is not a mere irregularity. It is a positive invasion of a substantial right of the defendant under the law." A new trial was granted because of the failure of the prosecutor to indorse and produce the mentioned witnesses.

While the application for indorsement of witnesses, either by the prosecution or the defendant, during the trial lies within the sound discretion of the trial court, yet this discretion is a judicial discretion. There is no claim made that the indorsement and production of Jean Carpenter as a witness would prejudice the prosecution or cause undue delay in the trial of the case, but it is urged that the

denial of the indorsement was warranted because Jean Carpenter and Dr. Tann were jointly charged of a crime in another information and for the further reason that defendant could have called her as a witness if he so desired. We do not think the reasons given by the prosecutor come within the exceptions to the rule mentioned in *People* v. *Raider,* 256 Mich 131. The purpose of the rule is to insure the whole of the *res gestae* and to protect the accused against the suppression of testimony favorable to him.

It is the duty of the prosecution to show the whole transaction as it was, regardless of whether it tends to establish guilt or innocence. In our opinion Jean Carpenter was a *res gestae* witness. She was in a position to give evidence of some of the events that occurred from the time Frances Lessard entered Dr. Tann's office until she left. Jean Carpenter did not become a *res gestae* witness after the introduction of the photographs, but was a *res gestae* witness at the time the information was filed. Failure to indorse and produce her as a witness was an abuse of judicial discretion and commands reversal.

The judgment is reversed, and a new trial granted.

Bushnell, Boyles, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.