Purpose of indorsement of names of witnesses known to prose-
cutor on information is to protect an accused person against
false accusations and to prevent the suppression of testimony
favorable to him (CL 1948, § 767.40, as amended by PA 1961,
No 11).

2. SAME—CODEFENDANT—INDORSEMENT—NOLLE PROSEQUI.

Indorsement of name of codefendant on information as witness
after prosecution was dismissed as to him on *nolle prosequi* at
start of trial for assault with intent to murder would not serve
general purpose of rule requiring indorsement of names of
witnesses, because defendant knew that his codefendant was
a possible witness, and there was nothing in the record to
indicate that codefendant's testimony would add to *res gestae*
or be favorable to defendant (CL 1948, § 750.83; CL 1948,
§ 767.40, as amended by PA 1961, No 11).

3. SAME—INDORSEMENT OF WITNESSES—SAVING QUESTION FOR REVIEW
   —OBJECTION.

Objection to failure of prosecutor to add name of witness by
indorsement on information, when such failure is known at

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  27 Am Jur, Indictments and Information § 46.
[3, 4]  27 Am Jur, Indictments and Information § 46; 39 Am Jur,
        New Trial §§ 26, 197.
[5]  53 Am Jur, Trial § 511.
     Duty in instructing jury in criminal prosecution to explain and
     define offense charged.  169 ALR 315.
     Duty of court to instruct on the subject of alibi.  118 ALR 1303,
     1306.
[6]  20 Am Jur, Evidence § 151.
[7]  20 Am Jur, Evidence § 151; 6 Am Jur 2d, Assault and Battery
     § 107; 53 Am Jur, Trial § 648.
[8]  53 Am Jur, Trial § 893.
[9]  53 Am Jur, Trial § 890.
[10]  6 Am Jur 2d, Assault and Battery §§ 92, 107.
[11, 12]  53 Am Jur, Trial § 851.
     Taking of notes by jury.  154 ALR 878.
[13]  5 Am Jur 2d, Appeal and Error § 894.
[14]  5 Am Jur 2d, Appeal and Error § 893.

PEOPLE v. McINTOSH.

trial, cannot be preserved as grounds for new trial unless motion to indorse name is made at trial (CL 1948, § 767.40, as amended by PA 1961, No 11).

4. SAME—CODEFENDANT—INDORSEMENT—FAILURE—OBJECTION.

Objection to failure of prosecutor to move for indorsement of name of codefendant on information as witness after prosecution was dismissed as to him at start of trial, on charge of assault with intent to murder, *held*, too late when made for first time in motion for new trial, when possibility that codefendant could be *res gestae* witness was known by defendant and his counsel at start of trial, and no motion was made to indorse codefendant as witness although matter of omission or addition of witnesses was discussed at 4 different times during trial (CL 1948, § 750.83; CL 1948, § 767.40, as amended by PA 1961, No 11).

5. CRIMINAL LAW—INSTRUCTION TO JURY—REQUEST TO CHARGE.

Omission of a legally essential ingredient of a crime in the charge to jury is error, even in the absence of a request to charge.

6. SAME—ESSENTIAL INGREDIENT—BURDEN OF PROOF—IDENTITY.

Identity of the accused as the perpetrator of the alleged crime is a legally essential ingredient of the proof in every criminal prosecution and forms part of the burden of proving the guilt of the accused beyond a reasonable doubt.

7. SAME — ELEMENTS OF CRIME — IDENTITY OF CRIMINAL — INSTRUCTIONS.

Charge to jury in trial for assault with intent to murder *held*, to include a sufficient instruction on the question of identity of the defendant as the person who committed the assault, when the charge included instruction as to the elements of the crime and the burden of proof, the only issue as to the identity of the defendant as the assaulter was raised at trial by cross-examination of prosecution's witnesses, and no special request to charge on the issue of identity was made (CL 1948, § 750.83).

8. SAME—JURY—IRREGULARITY.

Misconduct or irregularities of or affecting the jury must result in prejudice to the accused to cause reversal of a conviction on such grounds.

9. SAME—JURY—FAILURE TO ADMONISH ABOUT DISCUSSING CASE.

Failure of the trial court to admonish the jury not to discuss criminal case with others or among themselves before every recess

.and adjournment *held,* not error when jury was so admonished in preliminary instructions before start of trial and once during trial, and the record shows no basis for a claim of prejudice to defendant resulting from such failure.

10. SAME—ASSAULT WITH INTENT TO MURDER—PRESENT ABILITY—JURY QUESTION.

Conviction of assault with intent to do great bodily harm less than murder is not reversed, where present ability to murder was a fact question to be decided by jury upon evidence as to kind of weapon used, distance from which it was fired, and the nature of the injury inflicted, as against contention that the weapon used, a 16-gauge shotgun, could not kill a human being at the distance from the victim at which it was fired (CL 1948, §§ 750.83, 750.84).

11. SAME—JURY—TAKING NOTES.

Taking of notes by a juror during trial *held,* not to require reversal of defendant's conviction of crime of assault with intent to do great bodily harm less than murder where there is no showing that prejudice resulted from taking of notes, the court ordered the juror to cease taking notes when he was discovered, the notes were ordered destroyed, and defendant's counsel specifically agreed with court's action (CL 1948, § 750.84).

12. SAME—JURY—TAKING NOTES—PREJUDICE.

Court of Appeals does not find it necessary generally to condone or condemn the taking of notes by a juror in a prosecution for crime, where the taking of notes objected to in a particular case by defendant was stopped when trial court learned of it, the notes were ordered destroyed, and there was no showing of prejudice to defendant on the record.

13. SAME—INSTRUCTIONS.

Charge to jury in prosecution for crime must be read as a whole in determining whether it was prejudicial to defendant.

14. SAME—INSTRUCTIONS—MEANING OF WORDS.

Language of court in charge to jury in prosecution for crime in which court said "I would ask you to try and follow the law as I give it to you," meant, in context in which it was used, that jurors should listen carefully so that they might understand the law as the court gave it to them, and was not a suggestion that the jury could accept the instructions of the court or reject them as they saw fit.

Appeal from Wayne; Rashid (Joseph G.), J.   Submitted Division 1 October 7, 1966, at Detroit. (Docket No. 1,530.)   Decided February 14, 1967. Rehearing denied March 17, 1967.

William Holt McIntosh was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo C. Marchand,* Assistant Prosecuting Attorney, for the people.

*Donald P. Howard,* for defendant.

HOLBROOK, J.   On June 1, 1964, upon the complaint of one Richard Donahoo, a warrant was issued charging the defendant William Holt McIntosh, together with Marion Duane Young, with the crime of assault with intent to murder.[1]   A preliminary examination was held, and upon completion thereof on July 16, 1964, the defendant was bound over to Wayne county circuit court for trial.   The trial of this matter commenced on December 7, 1964, and was completed on December 9, 1964.   The jury found the defendant guilty of the lesser offense of assault with intent to do great bodily harm less than murder.[2]

On the first day of trial, the information against Marion Duane Young was *nolle prossed.*   Young's name was not indorsed on the information.

The circumstances out of which this case arose appear as follows:   At about 7:30 p.m. on May 30, 1964, the complainant and a group of friends were preparing to leave the picnic area of the Edward

---

[1] CL 1948, § 750.83 (Stat Ann 1962 Rev § 28.278).
[2] CL 1948, § 750.84 (Stat Ann 1962 Rev § 28.279).

Hines Park, Plymouth, Michigan. At the same time, three persons drove by the picnic area in a white Chevrolet El Camino pickup. As the truck passed the group in which complainant was standing, the person seated on the passenger side shouted threatening and derogatory remarks to those in the picnic area. The truck then proceeded a short distance down the road and stopped, at which time the passenger got out of the vehicle, pointed a shotgun at the group of people standing alongside the road, and fired. The complainant, Richard Donahoo, took the main part of the blast in his legs and torso. He was taken to St. Mary's Hospital, Livonia, and Wayne County General Hospital for treatment and was released the same evening. His wounds were described as superficial.

A short time after the shooting, a State police trooper stopped a white Chevrolet El Camino pickup for a traffic violation. The pickup was driven by Marion Duane Young, seated in the middle was Nancy Barham, and on the passenger's side was the defendant, William Holt McIntosh. A 16-gauge shotgun was found resting against the seat between Miss Barham and the defendant. Witnesses present at the scene of the shooting identified the defendant as the person who fired the shotgun.

Defendant raises the following 6 questions on this appeal for review which will be considered in proper order.

1. *Where the charges against a codefendant were nolle prossed on the first day of defendant's trial, did the people cause reversible error by failing to indorse the name of that person on the information as a res gestae witness?*

The codefendant in this case was Marion Duane Young, allegedly the driver of the pickup from which the shot was fired. Young and the defendant were

informed against in the same information, and both names appear twice in that information: once on the front, and again on the back in the caption above the names of the witnesses. The claim that Young's name should have been indorsed along with the other witnesses was made for the first time in the motion for a new trial. Moreover, during the course of the trial, there were no less than four separate discussions relating to whether certain witnesses should be added or waived. Young was never mentioned.

The applicable statute, CL 1948, § 767.40, as last amended by PA 1961, No 11 (Stat Ann 1965 Cum Supp § 28.980), reads as follows:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant; he shall indorse thereon the names of the witnesses known to him at the time of filing the same. The information shall be subscribed by the prosecuting attorney or in his name by an assistant prosecuting attorney. Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."

The right guaranteed by the above statute is a substantial one and the purpose is to protect an accused against false accusations and to prevent the suppression of testimony favorable to the accused. *People* v. *Davis* (1955), 343 Mich 348, citing *People* v. *Tann* (1949), 326 Mich 361. This policy was carried out in *People* v. *Castelli* (1963), 370 Mich 147, where the denial of defendant's motion for a directed verdict made at the close of the people's case on the ground that a *res gestae* witness was not indorsed, was reversed. In holding that the name of the witness should have been indorsed, the court noted that

defense counsel did not know of the witness until trial and there was evidence that the witness would testify in favor of the defendant.

In the instant case, both of these elements are lacking. Because Young was a codefendant up until the time of trial, and because Young's name appeared on the information twice, the defendant cannot claim that he was unaware of the fact that Young could perhaps be classified as a *res gestae* witness. Further, there is nothing in the record to indicate that Young's testimony would add to the *res gestae* or would be favorable to defendant. Knowing that Young was allegedly intimately connected with the transaction out of which this crime arose, by virtue of his having been originally named a codefendant in the information, the defendant should not now be heard to claim that the failure to indorse Young as a *res gestae* witness resulted in the suppression of testimony favorable to the defendant. The purpose of the rule has no application in this case.

It also appears that defendant's objection was raised too late. The first time Judge Rashid had the opportunity to rule on this issue was when he was presented with defendant's motion for a new trial. Prior to that time, the omission or addition of *res gestae* witnesses was discussed four times. Not once during the trial did defense counsel request the indorsement of Young as a *res gestae* witness. In *People* v. *Prescott* (1934), 268 Mich 606, 610,

"Defendant moved for a new trial, one ground being the failure of the prosecution to indorse on the information the names of the 10-year-old sister of the prosecutrix and an adult boarder at defendant's home, who were both in another part of the house at the time of the alleged offense. *No motion to so indorse was made at the trial and the point could not be reserved as grounds for a motion for a new trial.*" (Emphasis supplied.)

In *People* v. *Dimitroff* (1948), 321 Mich 205, 209, the defendant was convicted of taking indecent liberties with an 8-year-old child in a movie theatre. The claimed error was that the prosecution did not indorse the names of the two companions of the complaining witness who were present when the offense occurred. Observing that there was no showing as to what the witnesses would have testified to, the court held that "The failure to indorse the names of *res gestae* witnesses on the information cannot be raised for the first time on a motion for a new trial."

In the instant case, there is no claim of prejudice other than the appearance of Marion Duane Young's name in the wrong place on the information. Under the circumstances, the claim of error is without merit.

2. *Did the trial court commit error by failing to instruct the jury on the issue of identity?*

It should be noted that the issue of identity was raised only on cross-examination. In other words, the only form of defense in this case was an attack on the prosecution witnesses who identified the defendant as the person who fired the shot. Undoubtedly, such cross-examination is proper, but whether this tactic requires a special instruction is another matter. There was no request to charge on the subject of identity, and after the instructions were given, defense counsel stated that he was satisfied with the charge.

CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052) provides that: "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." Nevertheless, it has been held that even where no request is made, it is error to omit a *"legally essential ingredient."* *People* v. *Guillett* (1955), 342 Mich 1, 7.

No citation of authority is necessary for the proposition that the people must prove the guilt of an accused beyond a reasonable doubt. In every criminal prosecution, this is a "legally essential ingredient"; no prosecutor can escape this burden. In essence, the defense in this case is that the prosecutor could not prove the identity of the assailant beyond a reasonable doubt. Cross-examination of the people's witnesses in this case was designed to implant such a doubt in the minds of the jurors.

. In his charge, the trial judge referred twice to the burden of proof, at one point stating: "the burden rests upon the people to establish the defendant's guilt of the offense with which he is charged beyond a reasonable doubt." The burden of proof resting on the people and the definition of a reasonable doubt were carefully explained to the jury, and there is no reason advanced to suggest that the jury had any doubt that it was this particular defendant's guilt which was at issue. The instructions relating to the elements of the crime and burden of proof covered in essence the identity of defendant.

3. *Was it error for the trial court to fail to admonish the jury prior to every recess and adjournment that they were not to discuss the case with others or among themselves?*

. Only once during the trial was the jury admonished not to discuss the case. At no time did defense counsel request the judge to admonish the jury as to their duty in this regard. When the jury panel was first assembled, they were, in the preliminary instructions, specifically and properly instructed to refrain from discussing a case with others or among themselves and not to receive outside communications.

Appellant's claim stated simply is that the mere neglect to instruct the jury prior to every adjourn-

ment as to their duty, by itself, creates an obligation to reverse. There is no claim of prejudice, nor does the record disclose a basis for such a claim. "To authorize reversal of a conviction on account of misconduct or irregularities of or affecting the jury, it is essential that prejudice result to the accused." 8 MLP, Criminal Law § 573. Application of this principle is illustrated in *People* v. *Nick* (1960), 360 Mich 219, where certain remarks pertaining to the defendant's guilt were made in the presence of jurors outside of the courtroom. There was no showing that any juror was influenced by these remarks. Secondly, the jury had been instructed to decide the case on the evidence presented in court. In the instant case, the jurors were reminded of their duty in this regard once prior to trial in the preliminary instructions and once during the trial. They were not unaware of their obligation, although prudence would dictate that the trial judge should have been more careful in reminding the jury not to discuss the case. In the absence of a showing of prejudice, however, the claim of error is not well founded and reversal is not required.

4. *Should the defendant's conviction be reversed because the people failed to prove that the defendant had the present ability to carry out the crime charged?*

The crime charged in the information was assault with intent to kill and murder. The defendant contends that the people failed to prove present ability to carry out the crime charged because the weapon, a 16-gauge shotgun, could not possibly kill a human being at the distance from which it was fired. In support of this theory the defendant points out that complainant's wounds were superficial and death did not ensue from the assault.

The jury was apprised of the type of weapon used, the distance from which it was fired, and the nature of the injury inflicted. Under these circumstances it would be a question of fact as to whether the defendant had the present ability to commit the crime charged. "Jurors are the sole judges of the facts and neither the trial court nor this Court can interfere with their exercise of that right." *People* v. *Miller* (1942), 301 Mich 93, 100.

5. *Should the defendant's conviction be reversed because one juror was discovered taking notes during trial?*

As soon as the juror was discovered taking notes the judge ordered him to desist and instructed the juror to destroy the notes. Defense counsel specifically stated that the court's action in handling this matter was agreeable.

The exact point raised by this claim of error has not been decided in Michigan. Authority from other jurisdictions is concisely summarized in the following quotation from 154 ALR 879:

"While the propriety of allowing jurors to take notes during the course of a trial depends in some cases upon the surrounding circumstances, and while some courts have merely expressed doubt as to whether it is improper for jurors to so conduct themselves, it has generally been held or stated in other cases to be entirely proper for members of a jury to take notes of the testimony or statements or arguments of counsel, either upon their own volition, or upon motion of counsel, particularly in the absence of any prejudice to the parties.

"Other courts have expressed the view that while the practice is not to be commended, it is a matter within the discretion of the trial court.

"On the other hand, it has been held that the practice is improper, and that a trial court, upon observ-

ing such conduct, does not commit error in suppress-
ing it." (Footnotes omitted.)

For purposes of the present appeal it is not neces-
sary to either condone or condemn the practice of
taking notes. It is sufficient to note that there is no
showing of prejudice on this record.

6. *Did the trial court commit error by making the
statement in his instruction that the jury must "try
and follow the law?"*

The context in which the statement was made is as
follows:

"It is my responsibility, as you know, to now give
you the applicable law. I admonish you first that
you are to decide this case from the testimony you
heard from the witness stand. You are to apply the
law as I give it to you. Yours is a serious respon-
sibility; so let us, in a somewhat relaxed frame of
mind, examine the applicable law and in that atmos-
phere of relaxation, I would ask you to try and fol-
low the law as I give it to you. I shall make every
attempt to give it to you in language understandable
to lay people; and secondly, I want to say to you that
arguments of counsel are made to assist you and
are not evidence. So, too, vocal inflections on the
part of the court are not intended to, at any time
emphasize or de-emphasize a point or a rule of law,
but merely used by me to give you a charge as clearly
and as succinctly as I can."

Appellant's claim of error is that the above lan-
guage gave to the jury the option of following or
rejecting the instructions of the court. We do not so
read the instructions. The paragraph in part states:
"You are to apply the law as I give it to you * * *
and I would ask you to try and follow the law as
I give it to you." We interpret the last phrase as
an appeal to the jury to listen carefully so they may
understand the law as the court gives it to them.

Different meanings may attach to one group of words depending on whether they are viewed apart or in the context in which they were spoken. In determining whether the charge to the jury was prejudicial, it must be read as a whole. *People* v. *Serra* (1942), 301 Mich 124; *People* v. *Hancock* (1950), 326 Mich 471. We conclude the charge was fair and not prejudicial.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.