## PEOPLE v BUERO

1. Witnesses—Criminal Law—Res Gestae Witnesses—Indorsements—Exceptions.

   Res gestae witnesses are required to be indorsed on an information and produced at trial except: where the prosecution shows due diligence in attempting to produce a witness, where the testimony of a missing witness would be merely cumulative, where a missing witness was a participant in the alleged crime, and where the identity of a res gestae witness is made known to the defendant during or before trial, and the defendant formally waives indorsement and production at trial (MCLA 767.40).

2. Witnesses—Criminal Law—Res Gestae Witness—Remand—Procedure—Appeal and Error.

   The Court of Appeals will retain jurisdiction and remand a case for a hearing to determine whether testimony by a missing res gestae witness would have been merely cumulative and, thus, excused; under such remand the trial court will be required either to grant a defendant a new trial, or to state the reasons for denying a new trial and to forward its findings and transcript for further decision.

3. Criminal Law—Right to Counsel—Identification—Photographic Identification.

   A defendant is not entitled to the presence of an attorney at a photographic identification held before that defendant is taken into custody.

4. Criminal Law—Identification—Pretrial Identification—In-Court Identification.

   A pretrial identification procedure was not so impermissibly

References for Points in Headnotes

[1, 2] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
[3–5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[6] 58 Am Jur, Witnesses § 754.
[7] 75 Am Jur 2d, Trial § 62.
[8] 75 Am Jur 2d, Trial §§ 915, 916.
[9] 75 Am Jur 2d, Trial §§ 734–736.
   Burden and degree of proof as to alibi. 124 ALR 471.

suggestive as to negate the subsequent in-court identification of a defendant where the procedure used did not give rise to a very substantial likelihood of irreparable misidentification.

5. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—PRETRIAL IDENTIFICA-
   TION—POLICE OFFICERS.

   A policeman may testify as to what took place at a pretrial identification of a defendant and under what circumstances the identification occurred, but may not testify to the nature or quality of the identification.

6. CRIMINAL LAW—EVIDENCE—ALIBI WITNESSES—PRIOR ARRESTS—IM-
   PEACHMENT.

   Testimony regarding the prior arrests of alibi witnesses, which would be inadmissible if first elicited by the prosecutor, is not erroneously admitted where defense counsel himself elicited such testimony.

7. WITNESSES—CRIMINAL LAW—SEQUESTRATION OF WITNESSES—JUDI-
   CIAL DISCRETION—FAILURE TO OBJECT.

   A trial judge did not err by permitting a witness, the police officer who was in charge of the investigation, to remain in the courtroom seated next to the prosecutor, even though a timely motion by defense counsel to sequester all witnesses had been granted by the court; there was no abuse of discretion and defense counsel made no objection at trial.

8. JURY—INSTRUCTIONS TO JURY—APPEAL AND ERROR—PRESERVING
   QUESTION—MANIFEST INJUSTICE.

   Failure of a trial court to admonish a jury that they were not to discuss a case among themselves or with others is not reversible error where no objection to the failure was made at trial and where there is no evidence of manifest injustice.

9. CRIMINAL LAW—DEFENSES—ALIBI—INSTRUCTIONS TO JURY—BUR-
   DEN OF PROOF.

   An instruction to a jury that "an alibi is a defense easy to prove and hard to disprove" did not prejudice the defendant where the trial court stressed the fact that the burden of proof is upon the state and not upon the defendant.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 October 14, 1974, at Lansing. (Docket No. 15540.) Decided March 24, 1975.

Wayne William Buero was convicted of armed robbery. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Sandra M. Kabboush,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: D. E. HOLBROOK P. J., and R. B. BURNS and BEBEAU,* JJ.

BEBEAU, J. On July 21, 1972, defendant Wayne William Buero was found guilty by a jury in Oakland County Circuit Court of armed robbery, and was sentenced August 18, 1972 to a term of 10 to 30 years in prison. He appeals as of right.

At trial complainant Floyd Hanson testified that at about 12:30 a.m. on May 3, 1972, he was awakened by loud knocking at his front door. Upon opening the door, Mr. Hanson saw a man whom he identified at trial as the defendant. At that moment, another man, who was never identified, pushed through the door and pointed a sawed-off shotgun at Mr. Hanson. Mr. Hanson saw only one gun and did not, at this time, observe the defendant as armed. Mr. Hanson testified that he was forced into his living room and made to lie, facedown, on the floor. About five minutes later, he was taken into the bedroom of his nine-year old daughter where his wife, son, and daughter were being held. All four Hansons were then tied up while the men robbed the house.

Mrs. Hanson testified that she was awakened by

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a man who was pointing a sawed-off shotgun at her. She identified the defendant at trial as this man. She was then taken to her daughter's bedroom and later tied up.

The son, Larry Hanson, was taken to his sister's room by a man whom he could not identify at trial. The Hanson's minor daughter, who was awakened when her parents and brother were herded into her room, did not testify at trial.

Numerous articles were taken from the Hanson home, and the Hanson's Dodge van was seized. The van was found abandoned. The only article recovered was a credit card bearing Floyd Hanson's name. It was recovered when defendant's wife attempted to use it four days after the robbery. Defendant, who was with his wife at the time, was questioned but not arrested until May 11, 1972, when his house was searched, but none of the other articles taken from the Hansons were found.

On appeal, defendant raises a number of causes of error. The most cogent of these is the claim that the prosecutor's failure to endorse and produce the Hanson's daughter, Linda, as a res gestae witness requires reversal. The prosecutor has an affirmative duty to endorse on the information and produce all res gestae witnesses known to him. MCLA 767.40; MSA 28.980; *People v Blazenzitz,* 212 Mich 675; 180 NW 370 (1920); *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973). However, the prosecutor argues he was under no duty to endorse or produce Linda Hanson because she was not a res gestae witness. Alternatively, prosecutor claims that, even if she were, her testimony would have been cumulative and, thus, exempt from mandatory endorsement; *People v Bartlett,* 312 Mich 648; 20 NW2d 758 (1945). Prosecutor further

claims that defendant's failure to object or move at trial to endorse Linda Hanson precludes his claim of error. *People v Bennett,* 46 Mich App 598; 208 NW2d 624 (1973); *rev'd on other grounds,* 393 Mich 445; 224 NW2d 840 (1975).

An examination of the record indicates that Linda Hanson is a res gestae witness, though her testimony may have been cumulative.

Except for a credit card, which police took from defendant's wife, the only evidence against the defendant was the Hansons' identifications; since the accused entered and left Linda Hanson's room several times, it is reasonable to assume that this nine-year old child may have viewed the intruder and such view may have left an impression on her mind. It is possible that Linda's description, if she could give one of the accused, would not necessarily be repetitive. Her inability to identify the defendant may have further supported the people's case.

The prosecutor also raises the possibility that Linda's youth would have made her incompetent to testify. However, since MCLA 600.2163, MSA 27A.2163 requires the court to determine a child's competency, and since youth, per se, does not make her testimony inadmissible, Linda's age did not render endorsement unnecessary.

The general rule in Michigan requires that res gestae witnesses are to be endorsed on the information and produced for examination at trial. However, the Michigan Supreme Court and this Court have established several exceptions to that general rule requiring production of res gestae witnesses for examination at trial. They are:

(1) When the prosecution makes a showing of due diligence in attempting to produce the witness.

(2) Where the testimony of the missing witness would be merely cumulative.

(3) Where the missing res gestae witness was a participant in the crime.

(4) Where the identity of the res gestae witness is made known to the defendant during or before trial and defendant does not move for endorsement or production of the witness. *People v Bennett,* 46 Mich App 598; 208 NW2d 624 (1973); *rev'd on other grounds,* 393 Mich 445;224 NW2d 840 (1975).

The last exception to the rule so established, appears to have been changed by the Supreme Court. It should not be ignored that *Robinson, infra,* also applies to *possible* res gestae witnesses.

The applicability of *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), to this case will determine whether defendant's failure to move for endorsement of Linda Hanson precludes him from raising the nonendorsement on appeal. At the time the defendant was convicted and filed his appeal, our law clearly held that failure to endorse or produce a res gestae witness was not grounds for reversal if the defendant knew of the witness's existence but failed to move for endorsement or production. After this appeal was filed, however, the Supreme Court held in *Robinson, supra,* that failure to move for endorsement would not preclude appellate review and that only a formal waiver at trial by a defendant would excuse endorsement. There is no such waiver in the record here, and it is obvious that defense counsel knew of her existence prior to trial and, from a tactical standpoint, may have kept silent either because he preferred not to have her as a witness or he remained silent for the purpose of having an issue to raise in the appellate court.

This Court in *People v Koehler,* 54 Mich App 624, 638; 221 NW2d 398 (1974), stated:

"However, we cannot ignore the Michigan Supreme Court's recent decision in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), in which Justice COLEMAN, writing on behalf of a unanimous court, stated:

" 'There is but one issue. Is defendant denied a fair trial when the prosecutor fails to endorse on the information the name of the possible res gestae witness who was, or should have been, known to him prior to trial and he fails to produce such witness at trial?

" 'Defendant says that the duty of the prosecutor to indorse and produce all res gestae witnesses is an essential ingredient of a fair trial. Although no objection was raised during trial, failure of the prosecutor to act is said to demand reversal.' "

This Court in *Koehler* further stated at 640:

"In accordance with *People v Robinson, supra,* and *People v James,* 51 Mich App 777, 784–785; 216 NW2d 473(1974), we retain jurisdiction of this case and remand to the trial court for a hearing to determine whether or not Mrs. Stevens' [res gestae witness] testimony would have been cumulative. The trial judge shall require the prosecutor to produce Mrs. Stevens [res gestae witness] at a hearing within 45 days from the release of this opinion. Mrs. Stevens shall be examined regarding her knowledge of the crime of which the defendant was convicted. At the conclusion of the hearing, the trial judge shall either grant the defendant a new trial or shall, within ten days after the end of the hearing, state his reasons for denying defendant a new trial. The trial judge's findings and a transcript of the hearing shall be forwarded to this Court. Defendant may file a supplemental brief within 15 days after the trial court reaches its decision, and the people may file their brief within 15 days after receipt of defendant's brief. If Mrs. Stevens cannot be located, the prosecutor must 'bear the consequences' of the same and defendant

shall be granted a new trial. *People v King,* 50 Mich App 487, 491; 213 NW2d 597 (1973)."

The above cited case contained a dissenting opinion by Judge O'HARA which opinion has considerable merit. However, this matter is remanded to the trial court for further proceedings consistant with the controlling opinion of this Court in *Koehler* which interpreted *Robinson.* Prior to *Koehler* and *Robinson,* the defendant would have had a fair trial as to this aspect of the case.

Defendant's additional claim of error in the identification process is that counsel should have been present at the May 8th photographic showup since the police investigation had "focused" on the defendant. *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), as most recently elucidated by *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), is dispositive of this issue. *Franklin Anderson, supra,* held that police may, under certain circumstances, hold a photographic showup, instead of a lineup, when a suspect is in custody. In such cases, an attorney is required just as with a lineup. *Lee, supra,* stressed that "the *Franklin Anderson* rule attaches with custody * * * . We decline to extend the reasoning of *Franklin Anderson* to the pre-custody, pre-questioning, and mere suspicion phase" *Id* at 625; 218 NW2d at 658. Defendant here was not in custody when the May 8th photographic display took place.

Defendant next claims that the pretrial identification procedures were so impermissibly suggestive as to negate the in-court identification. As noted in *People v Hallaway,* 389 Mich 265, 284; 205 NW2d 451, 458 (1973):

"The challenged courtroom identification in this case, therefore, can only be excluded if it was based upon the

pretrial identification, and if the pretrial identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."

Defendant points to the discrepancy between the composite and actual descriptions, to Mr. Hanson's identification of someone other than the defendant before trial, followed by his in-court identification of the defendant, to Mrs. Hanson's increasing ability to identify defendant and to Larry Hanson's inability to make an identification. We must ask whether " 'the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' ". *People v King,* 384 Mich 310, 313; 181 NW2d 916, 917 (1970), quoting *Simmons v United States,* 390 US 377, 88 S Ct 967, 971; 19 L Ed 2d 1247, 1253 (1968).

We find no evidence of impermissibly suggestive police methods. The fact that the son failed to identify the defendant at trial would indicate this and not support defendant's claims. The jury evaluated the testimony of the identifying witness. The difference between the composite description and defendant's description may have arisen from the fact that there were two intruders, descriptions of each going into the single description.

Defendant's next objection to the identification process is that the admission of hearsay testimony by the officer in charge concerning the Hansons' pretrial identifications constitutes reversible error. After Mr. and Mrs. Hanson had testified that they could not recall if they had made any identifications at the May 8th photographic display, Detective Wells testified that they both had selected the defendant's picture.

Defendant cites *People v Poe,* 388 Mich 611; 202

NW2d 320 (1972), as authority for reversal. *Poe* held that a policeman may testify as to what took place at the time of identification and under what circumstances the identification occurred, but may not testify to the nature or quality of the identification. Plaintiff responds alternatively that *Poe* was decided after defendant's trial and has not been deemed retroactive, that Detective Wells' testimony was cumulative, and that defendant failed to preserve any error by objecting to the testimony at trial.

No retroactive problem exists. *Poe* did not enunciate a new theory, but merely restated the law in Michigan since the 1925 decision of *People v Londe,* 230 Mich 484; 203 NW 93(1925). However, defendant's failure to object at trial, where this error could have been prevented, precludes him from raising it here in the absence of manifest injustice to him, *People v Palmer,* 47 Mich App 512; 209 NW2d 710 (1973). We find no such injustice. The Hansons' in-court identification had been so positive, that Detective Wells' testimony could have caused little prejudice.

Defendant further claims that his trial attorney's failure to object was a major mistake of counsel requiring reversal under *People v Degraffenreid,* 19 Mich App 702, 716; 173 NW2d 317, 324 (1969). We do not consider this failure to have been of "such serious proportion that it may have been decisive" but for which "defendant might not have been convicted". This is an excellent example of appellate counsel implying incompetency of trial counsel, due to his failure to object to the evidence from Detective Wells on this issue. Trial counsel is in a more strategic position than appellate counsel or reviewing courts in this particular issue to determine whether or not to voice an

objection. However, it is obvious to anyone with trial court experience in criminal matters that defense trial counsel in performing his responsibility as an advocate was correct in not voicing an objection. The evidence in question was of more value to the defendant than the people.

The defendant's next claim is that reversible error was committed when the prosecutor improperly impeached defendant's four alibi witnesses by bringing out prior arrests and when the prosecutor mentioned in his closing argument such arrests and the dishonorable discharge of one alibi witness. Defendant claims that "in several places" the prosecutor violated the rule of *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973), which held that no witness may be impeached by inquiry into prior arrests or charges not resulting in a conviction or into charges then pending. Unfortunately, defendant does not specify in which places the errors occurred. Upon searching the record, we find that each time the prosecutor brought out prior arrests or pending charges, the defense counsel had himself elicited these arrests on direct examination. As such, defendant cannot claim error. *People v Johnson,* 46 Mich App 212; 207 NW2d 914 (1973). For the same reason, defendant is precluded from claiming that error occurred when the prosecutor mentioned the arrests to the jury in closing argument.

The prosecutor did bring out on cross-examination the dishonorable discharge from the Army of one of the alibi witnesses, Benjamin Courtney. Defendant cites *People v Michael Robinson,* 386 Mich 551; 194 NW2d 709 (1972), as requiring reversal. *Michael Robinson* involved the prosecutor's elicitation of a defendant's dishonorable discharge. We might use the reasoning of *Falkner,*

*supra,* to extend the *Robinson, supra,* holding to witnesses. Even if we were to do so, the error here is clearly harmless beyond a reasonable doubt.

Defense counsel had already done much to discredit witness Courtney by bringing out his prior arrests. Further, Courtney was only one of four alibi witnesses, all of whom gave similar stories.

Defendant next contends as reversible error that, in three instances during his summation, the prosecutor expressed his personal belief in defendant's guilt and personally vouched for the evidence. *People v Ignofo,* 315 Mich 626; 24 NW2d 514 (1946), *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971). Having examined the allegedly prejudicial remarks in view of their relationship to the evidence adduced at trial, and to the prosecutor's entire closing argument, *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973), we find no evidence of error, and certainly no miscarriage of justice. MCLA 769.26; MSA 28.1096, *People v Jolly,* 51 Mich App 163; 214 NW2d 849 (1974).

In a supplemental appellate brief, defendant argues that he was improperly bound over for trial because the district court did not have jurisdiction to do so. Defendant contends that the 1968 amendment to the Revised Judicature Act of 1961, 1968 PA 154, which gave criminal jurisdiction to District Courts, is unconstitutional as violative of the "title-body clause." Const 1963, art 4, § 24. *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974), decided this issue adversely to the defendant.

Appellant argues that the trial court erred by abusing its discretion in failing to exclude *sua sponte* the testimony of a witness who remained in the courtroom after a timely motion by defense counsel that all witnesses be sequestered was granted.

The witness who was permitted to remain in the courtroom during the trial was the officer in charge of the case. Although fundamental fairness to the people is a matter seldom considered in criminal matters, there was no abuse of judicial discretion to permit the officer in charge of the case to be seated next to the prosecutor. Nor does the appellant state just how his right to effective confrontation of witnesses was affected.

It is further noted the appellant's counsel never objected to the presence of the witness in the courtroom and now uses the argument on appellate review. As the rule stands, at the present moment, this is not a basis for reversal.

Next, defendant notes that the trial judge did not admonish the jurors at any time that they should not discuss the case among themselves or with others. Although we find this failure unusual, we find no evidence of manifest injustice resulting from it. *People v Haugabook,* 23 Mich App 356; 178 NW2d 556 (1970), *lv den* 383 Mich 801. Only one such instruction is required, *People v McIntosh,* 6 Mich App 62; 148 NW2d 220 (1967), and again, one objection at trial would have avoided the problem.

Finally, defendant claims that the trial court's jury instruction on the alibi defense contained prejudicial error in that it placed the burden of proof on defendant. Although part of the instruction stated that "an alibi is a defense easy to prove and hard to disprove", *the judge had stressed the fact that "the burden of proof is upon the State (and) * * * does not fall to the respondent".* (Emphasis added.) Failure to object to an instruction precludes appellate review. GCR 1963, 516.2. Inasmuch as the challenged instruction was in wide use and had been frequently upheld, *Palmer, su-*

*pra,* no serious error requiring our *sua sponte* examination exists. *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). The defendant had a fair trial though not one of perfection.

However, the cause is remanded for a hearing on the res gestae witness issue as instructed, and pursuant to the previously cited decision of this Court.